## CLARK BROS. & CO., Inc., et al. v. POU et al.

*Circuit Court of Appeals, Fourth Circuit.*
June 3, 1927.

No. 2613.

1. **Bailment** ⊜�summ18(3)—Artisan's lien on property for work done thereon is clearly established, but depends on possession, and is destroyed by surrender of possession and giving of credit to owner.

The lien of an artisan or worker on property on which he has worked for the amount due him for the work done is clearly established in common law, but depends on possession of the property, and is lost by surrender of possession and giving of credit to owner.

2. **Liens** ⊜�summ4—Lien implied by law will be excluded by contract inconsistent therewith.

A lien which the law implies will be excluded by contract containing stipulations inconsistent with such a lien.

3. **Bailment** ⊜�summ18(2)—Persons operating plants redrying tobacco furnished by co-operative association held not entitled to common-law lien on tobacco in their possession in view of contract.

Where contract between tobacco growers' co-operative association and persons operating redrying plants provided for payments to be made on redried weights on Monday of each week for all tobacco redried and delivered during preceding week to storage and other points, as directed by association, and recognized lien of prior mortgage given banks on tobacco, held, such persons were not entitled to a common-law lien for their charges on tobacco in their possession.

4. **Set-off and counterclaim** ⊜�summ46(1)—Persons redrying tobacco for growers' co-operative association held not entitled to set off claim for charges against receivers of association, suing for tobacco withheld (Code Va. 1919, § 6145).

Persons operating plants for redrying tobacco furnished by growers' co-operative association, under contract such that they were not entitled to common-law lien on tobacco in their possession for their charges, held not entitled to set off their claim for such charges against claim of receivers of association suing to recover tobacco withheld; Code Va. 1919, § 6145, being inapplicable.

5. **Bailment** ⊜�summ15—Tobacco growers' association's breach of contract with redriers held waived by redriers' proceeding under contract.

Persons operating plants for redrying tobacco for growers co-operative association under contract requiring payment on Monday for tobacco redried during the preceding week, by proceeding under contract without protest after failure of association to make payments in manner prescribed, waived any breach of contract.

6. **Set-off and counterclaim** ⊜�summ8(1)—Set-off will be allowed only to secure an equitable result.

Set-off will be allowed only to secure an equitable result, and not where its allowance will work an injustice to others having equal equities.

7. **Receivers** ⊜�summ81—Receivers have duty as officers of court to stand impartial between all parties concerned.

Receivers have a duty as officers of the court to stand impartial between all parties concerned, and to protect valid preferences and priorities as well as to make just distribution among general creditors.

Appeals from the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action by James H. Pou and others, receivers of the Tobacco Growers' Co-operative Association, against Clark Bros. & Co., Inc., and others. Decree for plaintiffs, and defendants appeal. Affirmed.

S. S. Lambeth, Jr., of Bedford City, Va., and John W. Eggleston, of Norfolk, Va. (S. L. Ferguson, of Appomattox, Va., on the brief), for appellants.

Aubrey E. Strode, of Lynchburg, Va., for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. These are appeals from orders of the United States District Court for the Western District of Virginia, entered on the 12th day of November, 1926, in the chancery cause of I. B. Farmer et al. v. Tobacco Growers' Co-operative Association, in which cause the appellees herein had been appointed receivers of said Co-operative Association, and, as such receivers, had petitioned said court for a rule against the appellants requiring them to turn over to said receivers certain tobacco in their possession, alleged to be the property of the

Tobacco Growers' Co-operative Association, and which said orders of November 12 directed the appellants to so turn over the said tobacco. In the case below the receivers petitioned for the rule against the five appellants, and in this opinion the appellees will be referred to as the receivers, and the appellants as the respondents.

The Tobacco Growers' Co-operative Association is an organization composed of growers of tobacco, who turned over their product, when raised, to the association for marketing. When the tobacco was received by the association at various points throughout the tobacco-growing district at the association's warehouses or receiving plants, certain advances in moneys were made to the growers by the association. In order to make these advances, it became necessary for the association to borrow money from banks or other sources, and to secure the amounts so borrowed the association gave a mortgage or lien on the tobacco in its possession, usually by means of warehouse certificates, used as collateral.

In order to properly market the tobacco that was not sold in a green condition, and in order to store it until it could be marketed, it became necessary to redry or condition the tobacco and prize or pack it into hogsheads. The association entered into contracts with various corporations and persons operating redrying plants to redry tobacco for a certain stipulated price per 100 pounds. Among the redriers with whom the association entered into such contracts were Clark Bros. & Co., Inc., R. D. Williams, trading as R. D. Williams Tobacco Company, D. Q. Eggleston, trading as B. P. Eggleston & Company, J. E. Sears & Co., Incorporated, and L. N. Ligon and T. J. Ligon, doing business as Pamplin Tobacco Company, all of whom are the appellants here.

The redrying contract entered into between the Co-operative Association and the respondents was similar in each case, and is set out in full in the record. This contract contained the following clause:

"(d) Payments to be made on redried weights on Monday of each week, for all tobacco redried and delivered during the preceding week to storage or other points by the redrier to the association, as directed by the association."

When the tobacco was shipped by the Co-operative Association to the redrier, it was in each instance accompanied by a slip having on it the clause, "Account American Trust Company, joint agent," and when the tobacco was shipped by the redrier back to the association at divers points it was always shipped for the account of the American Trust Company. Where the shipment was made by a common carrier, the bills of lading showed the shipment to be for the account of the American Trust Company, agent. These redriers had been working under this or a similar agreement for two or three years, but the tobacco in question in this case was handled under a contract dated in the year 1925, and is a part of the crop of tobacco raised in year 1925. The contracts were marked, "Season 1925, Standard Redrying Contract."

The affairs of the Tobacco Growers' Co-operative Association became involved, and on the 19th day of June, 1926, in the District Court of the United States for the Eastern District of North Carolina, in a suit in equity, upon the complaint of I. B. Farmer et al., the appellees were appointed receivers of the Co-operative Association to take charge of the affairs of the association with such full power and authority as is ordinarily vested in receivers in like cases. The proceeding in the Western district of Virginia is ancillary to the suit in equity in the Eastern district of North Carolina. At the time of the appointment of the receivers, all of the respondents, five in number, had in their possession certain amounts of tobacco that they had redried or were redrying under the contract entered into with the Co-operative Association. The receivers paid the respondents the amounts due them, respectively, for redrying the tobacco in their possession, and made demand upon the respondents and each of them for the delivery of the tobacco. This demand, the respondents and each of them refused, and held the tobacco in their possession under claim that they had either a lien on the tobacco held for work done upon other tobacco, already delivered to the Co-operative Association and not paid for, or that they had the right to offset their debts due from the association against the tobacco held.

While the tobacco was in possession of the redriers, their plants were visited by an agent of the American Trust Company from time to time, which agent checked the quantity of tobacco held by the redriers for the purpose of ascertaining just what tobacco was available as security for the money advanced the Co-operative Association. Possibly the plant of one of the respondents was not so visited by an agent of the American Trust Company. In the course of the redrying the respondents, from time to time, certified that they had certain amounts of tobacco on hand against which they held no

mortgage or lien, the evidence being that this certificate was in some instances given for the purpose of insurance and in others for credit purposes. This certificate read as follows:

"We certify the above tobacco is hanging in our factories and the grades and pounds as shown are correct to the best of our knowledge and belief. We hold no mortgage or lien on the above tobacco."

One of the respondents, Ligon, struck out the word lien whenever he made this certificate. Upon the refusal of the respondents to deliver the tobacco in their possession to the receivers, the receivers reported such refusal to the judge of the United States District Court for the Western District of Virginia, and prayed for a rule against the respondents, directing them to show cause why they should not be required to turn over said tobacco to the receivers. Upon service of which rule respondents came into court, filed their answers, setting up their claim to a lien and also their right to offset the debts due them from the association against the claim for the tobacco, and evidence was taken. The District Judge delivered an opinion to the effect that the standard redrying contract, especially clause (d) therein, "absolutely forbids a ruling that the redriers have a common-law lien for their charges on the tobacco in their possession," and further holding that respondents should not be allowed to assert their claims as set-offs, and entered an order directing the respondents to turn over the tobacco in their possession to the receivers.

[1, 2] The lien given the artisan or worker upon property upon which he worked, for the amount due him for the work done, is clearly established in common law, but possession of the property is essential to the lien. Surrender of possession and the giving of credit to the owner of the property destroyed the lien. This claim of lien is frequently illustrated by the case of the lien of the shoemaker for the value of his work done in repairing a pair of shoes. It was early settled by the Supreme Court of the United States that a lien which the law implies will be excluded by a contract containing stipulations inconsistent with such lien.

"A lien cannot arise, where, from the nature of the contract between the parties, it would be inconsistent with the expressed terms or the clear intent of the contract." Randel v. Brown, 2 How. 406, 11 L. Ed. 318.

"A special contract to accept a particular mode of payment of a demand, to which a right of lien would otherwise attach, or to give a time or credit for the payment, is in-consistent with a claim to retain the possession of the property until the payment is made, and consequently there is no right of lien in such a case." 19 American & English Encyclopædia of Law, p. 12, and cases there cited.

"No lien exists on goods remaining in the hands of a party when the time of payment arrives, in a case where credit has once been given. * * * The essence of the right is possession. * * * As it is a right founded on possession, it ordinarily must cease when the possession ceases. Therefore the relinquishment, if voluntary, operates as an extinction of the lien. * * *" 3 R. C. L. 123.

On these points and to the effect that credit once given precludes the lien, see, also, 17 R. C. L. p. 608; 6 C. J. 1134; 37 C. J. 314, and cases there cited.

[3, 4] In this case the Co-operative Association had to mortgage the tobacco as received by it to secure the money necessary to make the advances to the growers. It was not possible, or at least not probable, that they could secure money on this security, except by giving a first lien or mortgage thereon. The respondents must have known or should have known the plan under which the association was doing business, and that this plan necessitated the giving of a first lien upon the tobacco, in order to secure the money without which the Co-operative Association could not operate. It seems evident that the Co-operative Association was put upon the necessity of keeping the tobacco received by it in a condition so that the banks from which loans were secured would be given a first lien upon the tobacco, and it is reasonable to presume, that the standard redrying contract under which the respondents operated, was drawn with that specific end in view. This must necessarily have been so else the Co-operative Association could not have functioned.

Clause D in the redrying contract specifically and clearly contemplates the delivery of the tobacco before payment for the service rendered, and is a consequent giving of credit to the Co-operative Association. Under the authorities either the surrender of possession, or the giving of credit, extinguishes the lien, and in this case we have both surrender of possession and extension of credit, and in addition, the express terms of the contract, negativing any idea of a lien.

If, as was well said by the learned judge below, "This provision of the contract absolutely forbids a ruling that the redriers have a common-law lien for their charges on the

tobacco in their possession," how much more would it be the fact that the respondents would not have a lien for their charges on tobacco, the possession of which had already been surrendered.

Again, from time to time, the respondents certified that they had no mortgage or lien on the tobacco in their possession, and while the purpose for which such certificate was made might be material in considering the question of estoppel as to these respondents, these purposes certainly are not material when considering these statements as evidence of the construction put upon the re-drying contracts by the respondents themselves. For the purpose of showing how the parties to this contract regarded it, these statements are convincing evidence that the respondents themselves did not then consider that they had a lien.

In the case of Stoddard Woolen Manufactory v. Huntley, 8 N. H. 441, 31 Am. Dec. 198, there was an agreement to dress cloth and deliver it as it was finished, payment to be made once in three months. The court held that such a contract precluded the idea of a lien. In Wiles Laundering Co. v. Hahlo, 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496, there was a contract to launder and deliver collars and cuffs manufactured by the defendant, Hahlo, and return the goods as fast as laundered, and to receive payment the first of each month, and in this case lien was denied. In Tucker v. Taylor, 53 Ind. 94, the same principle was declared, because the delivery of the property worked on was made before payment and there was a consequent extension of credit to the owner of the property which extinguished the lien.

It is evident that to allow the respondents to assert their lien on the tobacco in their possession, or to offset the debt due from the Co-operative Association against the claim for this tobacco, would result in giving them a preference over the general creditors of the association, and also over the lien or mortgage creditors, a thing to which they are clearly not entitled. Again to allow the respondents either to assert a lien or to set off their claim would completely destroy the security represented by the tobacco in their possession to a creditor holding a lien or mortgage. This would be inequitable and unjust, in view of all the circumstances surrounding this transaction.

The claim advanced by the respondents, that clause D, as far as it governs payments due them, was never complied with by the Co-operative Association, has, as we see it, no effect upon the questions here considered.

To begin with, the requirement of payment on Monday for all tobacco redried and redelivered for the preceding week was in most instances impossible of being complied with. The association covered a large stretch of territory, these redrying plants of respondents were scattered, and it would have been a physical impossibility to report to the proper officer of the Co-operative Association and receive payment on Monday for all tobacco redelivered up to and including the preceding Saturday. The evidence shows that this condition of payment on Monday for the week preceding was seldom, if ever, complied with, and yet no protest was made by the respondents or any of them, until after the proceedings looking to a receivership of the Co-operative Association were inaugurated. [5] The respondents waived any breach of this contract by the Co-operative Association, by proceeding under the contract, without protest, in the face of the repeated failure of the Co-operative Association to comply with conditions respecting payment, conditions which were physically incapable of fulfillment. The effect of this waiver by the respondents of the breach respecting payment applies with especial force when the interests of third parties holding either mortgages or liens are considered.

The question of whether or not the respondents had a lien for work done upon the particular tobacco held in their possession is not before us, they having been paid for that, but the conclusion seems plain that they did not have a lien upon the tobacco in their possession for work done on tobacco already redelivered. In considering the claim of respondents to offset their debt against the tobacco in their possession or to recoup, the learned judge below in his opinion said:

"The contention that the redriers should be allowed to assert their claims as offsets, and to hold the tobacco until they are paid, is merely an effort to accomplish by indirection that which may not be accomplished directly. It is equivalent to saying that one who has no lien will be given all of the benefits of a lien. It goes almost without saying that a court of equity will not allow set-off where it would be inequitable so to do. In the present case to allow the claim of set-off (which would be exactly the same in effect as allowing a claim of possessory lien) would pro tanto defeat the claim of the Intermediate Credit Bank which has a lien, and would give to the redriers, who are mere common creditors, a priority of payment over other common creditors, as well as a priority over the costs and expenses of the receivership."

[6] Speaking of the allowance of set-off in equity, it is said in 24 Ruling Case Law, p. 805: "But there will be a grant of the remedy only for the purpose of securing an equitable result, and not where its allowance would work an injustice to others having equal equities. A fortiori, a set-off will not be allowed in equity where its allowance would work an injustice to others having superior equities."

To allow the claim of set-off would be to give the respondents priority over the other creditors of the Co-operative Association, both general creditors and lien creditors, and in view of our holding that the respondents had no lien, this would be inequitable. In 24 Ruling Case Law, p. 806, under the title "Set-Off and Counterclaim," § 14, relied upon by attorneys for respondents, it is said: "It is well settled that the insolvency of a party against whom a set-off is claimed constitutes a sufficient ground for the allowance of a set-off not otherwise available, except in those cases where by special circumstances there are other rights superior to those of the debtor invoking the remedy."

In this case there are other rights held by the trial judge to be superior to the rights of the respondents, and it is admitted that there are other creditors of the Co-operative Association whose rights are at least equal to those of the respondents when their lien is denied. "In equity set-off will only be allowed for the purpose of securing an equitable result, and will not be allowed when it works an injustice to others having equal equities." 24 R. C. L. p. 805.

Under the circumstances of this case, a debt due from the association to the respondents cannot be set off or recouped against a demand, in equity, for the possession of property held by respondents that belongs to the association. Section 6145 of the Code of Virginia of 1919 is certainly not applicable to this case, and the fact that the lending bank sent money to pay the claims of the respondents, should the court so order, can have no effect on the principles here discussed.

Insolvency of the Co-operative Association is alleged in the answer of the respondents to the rule, and the evidence is not conclusive on this point. If the association is insolvent, certainly the respondents, having by contract and by their acts negatived a lien on the property in their possession, are clearly not entitled to a preference over the other creditors. If the association is solvent and has property enough to pay all creditors, whether the members receive anything or not,

then the respondents will be paid their claim in full and will not be hurt.

In view of our conclusion as to the lien of the respondents, it is not necessary to here consider the question of estoppel raised by the receivers. This is not a question between the respondents and the Co-operative Association, but between the respondents and the other creditors, both lien and general, of the association. Whether solvent or insolvent, the members of the association cannot receive anything until all debts of the association are paid.

[7] It must be remembered that the receivers, while standing in the place of the Co-operative Association, have an additional duty as officers of the court, and that upon them rests the burden of standing impartially between all the parties concerned, with the further obligation, in so far as they possibly can, to protect the rights of all parties. "It is as much the duty of a receiver, in administering an estate, to protect valid preferences and priorities as it is to make a just distribution among the general creditors." 23 R. C. L. under title "Receivers," § 118, and cases there cited.

We find the decrees of the District Court free from error, and they are accordingly affirmed.