In re the DUPLAN CORPORATION and Duplan Fabrics, Inc., Debtors.

Nos. 76 B 1967, 76 B 1968.

United States District Court, S. D. New York.

July 21, 1977.

See also, D.C., 440 F.Supp. 734.

Shea, Gould, Climenko & Casey, New York City, for Trustee Alfred P. Slaner, by Lonn A. Trost, New York City, of counsel.

Ellenbogen & Klein, New York City, for Lee Dyeing Co. of N. C., Inc., by Franklyn Ellenbogen, New York City, of counsel.

Hugh Joseph Beard, Charlotte, N. C., for Beard Fabrics, Inc.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

On June 6, 1977, the Trustee in Reorganization of Duplan Corporation, Inc., a diversified textile and apparel company, and its subsidiary, Duplan Fabrics, Inc., debtors in reorganization proceedings under Chapter X of the Bankruptcy Act, moved by order to show cause for an order directing Lee Dyeing Company of North Carolina, Inc. ("Lee") to dye and finish certain knitted goods in its possession owned by DWK Fabrics By Duplan ("DWK"), a division of the debtors, and thereafter to turn over the finished goods to DWK. Although Lee has not opposed the entry of this order, Beard Fabrics, Inc. ("Beard"), a North Carolina knitter of textile goods, has appeared in opposition thereto and has claimed a lien on the goods in Lee's possession to secure the payment of $15,018.85 owed Beard for knitting services performed on the yarn which transformed the yarn into the knitted goods which Lee was to dye and finish.

The undisputed facts reveal that during July and August of 1976, Beard was commissioned by DWK to knit, and did knit, 28,212 pounds of DWK-owned yarn and, pursuant to DWK's direction, shipped these

knitted goods to Lee to be dyed and finished. At the time the petitions in reorganization were filed on August 31, 1976, DWK owed Beard $15,018.85 for the knitting services, for which Beard filed a Proof of Claim on October 4, 1976. However, prior to Beard's filing its claim, on September 27, 1976, charging that it had a lien on the knitted goods in Lee's possession by virtue of Section 44A–2(f) of the general Statutes of North Carolina, Beard instituted a suit against Lee in a North Carolina state court to recover custody of the knitted goods and prevent their delivery to DWK. In December 1976, that action was stayed, by order of the court on consent of the parties, pending "further action of the United States District Court for the Southern District of New York." In this regard, Section 111 of the Bankruptcy Act, 11 U.S.C. § 511, provides that this Court shall have "exclusive jurisdiction of the Debtor and its property, wherever located."

The issue is simply whether Beard has a lien under § 44A–2(f) upon the knitted goods in Lee's possession. That section provides in part:

"Any person who improves any textile goods in the ordinary course of his business pursuant to an express or implied contract with the owner or legal possessor of such goods shall have a lien upon all goods of such owner or possessor in his possession for improvement. . . ."

In addition, § 44A–3 provides:

"Liens conferred under this Article arise only when the lienor acquires possession of the property and terminate and become unenforceable when the lienor voluntarily relinquishes the possession of the property upon which a lien might be claimed, . . . The reacquisition of possession of property voluntarily relinquished shall not reinstate the lien."

The Trustee concedes that so long as Beard retained possession of the goods—while the knitting services were performed on DWK's yarn—Beard had a lien under § 44A–2(f) for the contractual amount of these services, but argues that the lien was extinguished with the transfer of the goods to Lee. Beard maintains that transfer to one other than the owner is not a "voluntary relinquish[ment]" within the meaning of § 44A–3 so as to terminate the lien conferred under § 44A–2(f); and, alternatively, that the relinquishment to Lee was based on a false representation by DWK which would preclude any finding of voluntariness of the transfer.

■ Beard's initial contention is apparently based on the proposition that § 44A–2(f), added to the North Carolina statutes by a 1975 amendment, is not declaratory of the common law, and that, as a creature of statute, it is not dependent on the retention of possession unless surrender to the owner has been effected. There is absolutely no legislative indication that § 44A–2(f) was intended to be the source of rights which are fundamentally different than those conferred by § 44A–2(a) through (e); and the courts of North Carolina have always recognized that §§ 44A–2 and A–3, like the predecessor statute, merely codified the common law respecting liens. See *Caesar v. Kiser*, 387 F.Supp. 645, 648 (M.D.N.C. 1975); *Barbre-Askew Finance, Inc. v. Thompson*, 247 N.C. 143, 100 S.E.2d 381 (1957); *Johnson v. Yates*, 183 N.C. 24, 110 S.E. 603 (1922). Thus, in the first instance, possession of the goods to which the purported lien attaches is crucial to the continued viability of the lien. *Barbre-Askew Finance, Inc. v. Thompson*, 247 N.C. at 147, 100 S.E.2d 38.

■ Beard has cited no cases in support of its claim that surrender of possession to one other than the owner does not terminate the lien. The plain language of § 44A–3 omits any reference to whom relinquishment must be made before a lien is terminated. Indeed, the clear intendment of that section, as declaratory of the common law, is to promote possession as the controlling factor in determining the existence of a lien; it is the mere relinquishing of possession which terminates any lien regardless of the identity of the recipient of the property. This interpretation is readily apparent from a reading of the entire statutory scheme, N.C.G.S. Ch. 44A, Art. I,

which not only provides for the establishment and maintenance of the possessory lien, but for the enforcement, as well, by public or private sale of the property securing the lien. Without the actual or constructive possession of such property, the enforcement provisions would be thwarted. Thus, it appears that the identity of the transferee is irrelevant, so long as dominion and control over the goods has been relinquished by the purported lienor, and the transfer has been voluntary.

 In the instant case, Beard clearly and unconditionally relinquished dominion and control over the goods upon the transfer to Lee. No relationship between Beard and Lee exists which would support a finding of constructive possession by Beard; to the contrary, invoices and bills of lading prepared by Beard reflecting shipment of the goods to Lee "for the account of" DWK indicate an intention to surrender the goods in accordance with the owner's directions.

Beard alternatively attacks the voluntariness of the transfer, claiming that it was induced to ship the goods to Lee by DWK's false representations that payment would be immediately forthcoming upon shipment to Lee and that any delay in payment was caused merely by "an unusual quantity of second quality goods." In support of this contention, Beard relies on *Maxton Auto Co., Inc. v. Rudd,* 176 N.C. 497, 97 S.E. 477 (1918) and *Reich v. Triplett,* 199 N.C. 678, 155 S.E. 573 (1930). These cases held that surrender of possession was involuntary when induced, in *Maxton Auto Co.,* by the lienor's receipt of a check, payment of which was subsequently stopped by the owner, and in *Reich,* by fraudulent representations incident to the tender of a worthless check to the lienor. *See also Adder v. Holman & Moody, Inc.,* (property not voluntarily relinquished when owner reacquired possession by delivering a worthless check to the lienor). Such is not the case before me.

Beard has not assigned to DWK's representations a fraudulent motive. Nor was Beard given any tangible assurance of payment which would induce it to part with possession of the knitted goods. It was simply promised payment. Nothing more. Unfortunately, Beard fell victim to the exercise of a legal right by its debtor—that of filing a petition seeking rehabilitation under the Bankruptcy Act—and the concomitant prohibition against the payment of pre-petition liabilities contained in that Act. On these facts, no finding of involuntariness can be made.

I find that Beard has voluntarily relinquished possession of the goods to Lee, and, accordingly, its opposition to the show cause order is without merit.

Settle order on notice.