**In re STEVCOKNIT, INC., et al., Debtor.**

**NCNB FINANCIAL SERVICES, INC., as Assignee of The Stedman Corporation, Plaintiff,**

**v.**

**STEVCOKNIT, INC., Stevcoknit Fabrics Co., Inc., Murbeck Knitted Fabrics, Inc., Moran Mills, Ltd., Park Yarn Mills Co., Stevcoknit Textiles Co., Inc., Stevcoknit Woven Corp., Bridgeton Dyeing & Finishing Corp. and The Stedman Corporation, Defendants.**

**Bankruptcy Nos. 81 B 12241–81 B 12249. Adv. No. 81–5790A.**

United States Bankruptcy Court, S.D. New York.

March 21, 1983.

---

Shea & Gould, New York City, for debtor; Philip R. Mann, Jacalyn F. Barnett, New York City, of counsel.

Kreindler & Relkin, New York City, for plaintiff, NCNB Financial Services, Inc.; Victoria L. Goodman, Roosevelt Island, N.Y., of counsel.

### DECISION ON MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Bankruptcy Judge.

This matter is before the Court on the summary judgment motion of NCNB Financial Services, Inc. ("NCNB") brought pursuant to Rule 56 of the Federal Rules of Civil Procedure as applied in bankruptcy matters by Rule 756 of the Rules of Bankruptcy Procedure [1]. The plaintiff is seeking

---

1. The citation to Bankruptcy Rule 756 refers to one of the Rules of Bankruptcy Procedure promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075 for use under the former Bankruptcy Act of 1898, as amended, and applicable under the Bankruptcy Code to the extent they

summary judgment declaring that NCNB, as assignee of its factored client, the Stedman Corp. ("Stedman"), has a lien, valid under North Carolina law, upon certain goods of the above-referenced debtors (hereinafter referred to as "Stevco"). In addition, NCNB seeks a hearing to determine the value of such goods subject to such lien.

I.  *Background Facts*

NCNB is a corporation with its principal place of business in Charlotte, North Carolina. It is in the business of factoring accounts receivable. Stedman is a corporation located in North Carolina which is in the business of processing textile goods.

On August 8, 1979, NCNB and Stedman entered into a factoring agreement. Pursuant to this agreement, Stedman assigned to NCNB all of its accounts receivable and all of Stedman's rights as an unpaid vendor or lienor. The pertinent portion of the agreement states:

> "We hereby sell and assign to you as absolute owners and you hereby purchase from us without recourse to us ... all assigned receivables now or hereafter owned by us which are acceptable to you.... *and our rights as an unpaid vendor or lienor.*" (emphasis added).

Since entering into this agreement, Stedman has continually factored its accounts receivable with NCNB.

Stevco, as an integrated entity, is a manufacturer of knit fabrics for sportswear. Throughout 1981, Stevco forwarded textile goods to Stedman for processing. All of the improvements were performed in North Carolina. As evidenced by Exhibit G of the affidavit of Thomas J. Brady, sworn to on June 21, 1982 ("the Brady Affidavit"), all of the textile goods were invoiced to the account of Stevcoknit Fabrics ("Fabrics") and each of the invoices stated that "This account has been assigned and is payable to: [NCNB]". In addition, each invoice stated its terms to be "net 30 days". Payment for all of these invoices were made to NCNB by Bridgeton Dyeing & Finishing

Corp. ("Bridgeton"), one of the aforementioned debtors making up Stevco.

On November 16, 1981 (the "Filing Date"), the affiliated debtors filed their respective petitions under Chapter 11 of the Bankruptcy Code and were thereafter authorized to continue in the operation of their respective businesses. As of the Filing Date, Stevco, through Bridgeton, had an acknowledged debt to Stedman of approximately $112,000 based on unpaid invoices from Stedman to Stevco. These unpaid invoices represented billings for Stedman's processing of Stevco's textile goods in the ordinary course of its business pursuant to their agreement. As of the Filing Date, some of the invoiced processed goods had been released to Stevco or its nominees and some remained in the possession of Stedman together with a quantity of other Stevco goods.

According to the North Carolina General Statute ("N.C.G.S.") Section 44A–2(f), *Persons Entitled to Lien on Personal Property:*

> Any person who improves any textile goods in the ordinary course of his business pursuant to an express or implied contract with the owner or legal possessor of such goods *shall have a lien upon all goods of such owner or possessor in his possession for improvement. The amount for such lien shall be for the entire unpaid contracted charges owed such person for improvement of said goods including any amount owed for improvements of goods, the possession of which may have been relinquished,* and such lien shall have priority over perfected and unperfected security interests. "Goods" as used herein includes any textile goods, yarns or products of natural or man-made fibers or combination thereof. "Improve" as used herein shall be construed to include processing, fabricating or treating by throwing, spinning, knitting, dyeing, finishing, fabricating or otherwise. (emphasis added).

Claiming the right to assert Stedman's unpaid vendors lien pursuant to the factor-

---

are not inconsistent.  *See* Bankruptcy Reform Act Sections 247, 402 and 405.

ing agreement, NCNB instituted an adversary proceeding before this court on November 24, 1981 seeking either to vacate the § 362 automatic stay so as to foreclose its alleged statutory lien on the goods or, in the alternative, to obtain adequate protection for its alleged lien. Upon application, this Court granted NCNB a temporary restraining order which prevented Stedman from releasing the Stevco goods. Following this, Stevco, Stedman and NCNB entered into a stipulation under the terms of which Stevco deposited $45,000 in escrow against which NCNB's lien, if any, would attach and Stedman, in turn, released the Stevco goods. It was further stipulated that should the escrow funds be found to be less than the actual value of any lien, then the deficiency would be regarded as an administration claim on the Stevco estate.

NCNB thereby asserts that there exist no genuine disputes regarding material facts and that, as a matter of law, it is a secured creditor of the Stevco goods.

## II. *Discussion of Legal Issues*

### A. *Whether the lien created was assignable to NCNB*

Though Stevco asserted a number of defenses to the original complaint, an examination of the pleadings clearly demonstrates a focus by the parties on one issue: Whether the lien granted Stedman by Section 44A–2(f) N.C.G.S. is assignable[2] to NCNB and, if assignable, whether it survives NCNB's payment to Stedman.

■ NCNB points to the plain language of the factoring agreement to demonstrate that it was clearly the intention of the parties that the lien possessed by Stedman pass to NCNB. In addition, it has generally been held that the lienor may transfer to a third party not only the debt owed him, but also the lien that secures it. *See* 6 Am. Jur.2d Assignments § 121 (1962); *Restatement,* Security § 67(1) (1941). The general rule of law is that the assignment of a claim carries with it the security on the claim which was held by the assignor. *United States v. Tyler,* 220 F.Supp. 386, 395 (N.D.Iowa 1963); *In re Country Programmers International, Inc.,* 18 B.R. 469, 471 (Bkrtcy.D.Vt.1982).

NCNB also puts forth the argument that the commercial needs of all parties would be better served by the assignability of the lien in that Stedman assigned its remedies with respect to its receivables as an inducement to NCNB to act as its factor and advanced money to Stedman upon the assignment of its invoices.

Finally, NCNB relies on the fact that Stevco has always been aware of NCNB's role as Stedman's factor as indicated by Stevco's previous payments to NCNB on prior Stedman invoices and that, consequently, Stevco cannot now disclaim Stedman's lien pursuant to the assignment.

In contrast, it is the contention of Stevco that the statutory lien created by Section 44A–2(f) is personal to Stedman, the artisan. Referring to the first phrase of N.C. G.S. § 44A–2(f) which states that "(a)ny person who improves any textile goods in the ordinary course of his business . ... shall have a lien upon all goods of such owner or possessor in his possession for improvement," the debtor, Stevco, contends that, by its own terms, the statute restricts the identity of the lienor to the person who improved the textiles and only so long as that same person improved the goods in the ordinary course of his business. Stevco citing, *Caminetti v. United States,* 242 U.S. 470,

---

**2.** Stevco also makes the argument that subrogation to a claim does not entitle an assignee to priority. Stevco does this by analogizing N.C. G.S. § 44A–2(f) to 11 U.S.C. § 507(d) under which one who is subrogated to the rights of a holder of a claim is not always subrogated to the right of the holder of such claim to priority. Plaintiff NCNB effectively refutes this argument by pointing to the fact that § 507(d) refers solely to *unsecured* claims while the claim at issue is a *secured* claim and, therefore, the analogy made by Stevco is improper within the context of the instant case. Further, it has been noted that § 507(d) "does not speak to the issue of assigned claims." 3 *Collier on Bankruptcy* ¶ 507.07 (15th Ed.), *See also In re Missionary Baptist Foundation of America, Inc.,* 667 F.2d 1244, 8 B.C.D. 1054 (5th Cir. 1982).

485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917), argues that the words of § 44A–2(f) are unambiguous and should thus be accorded their ordinary meaning.

Stevco further argues that inasmuch as the purpose of the possessory lien is to secure the retention of an artisan by allowing him to labor without fear of working without appropriate compensation, that Stedman, the artisan, no longer has a claim for compensation from Stevco defeats the rationale for the existence of the lien. Therefore, Stevco concludes that NCNB may not assert a lien which has been limited by statute to the original artisan, Stedman.

Having argued that the possessory lien under § 44–2(f) is personal to the artisan, Stevco further asserts that the lien itself is no longer valid. While it is clear that a debt was owed by Stevco to Stedman which created a lien pursuant to § 44–2(f), it is equally clear, Stevco argues, that once Stedman factored its accounts receivable to NCNB, the underlying debt from Stevco to Stedman and any possessory lien under the statute were eliminated. Citing *Eason v. Dew,* 224 N.C. 571, 94 S.E.2d 603, 606 (1956) and *Brown v. Ward,* 221 N.C. 344, 20 S.E.2d 324, 326 (1942), Stevco asserts that an artisan is not entitled to assert a lien in the absence of an underlying debt.

■ A common law lien refers to the right of a bailor to retain the possession of personal property until a debt due or secured by the property is satisfied. *Beck v. Nutrodynamics, Inc.,* 77 N.J.Super. 448, 186 A.2d 715, 717 (Essex County Ct.1962); *See also Pennsylvania Fire Ins. Co. v. Rinolo,* 108 N.J.E. 167, 154 A. 528, 529 (E. & A.1931). The court in *Beck* articulated this principle, stating:

> The bailee must, by his labor and skill, contribute to the improvement of the article bailed. The bailee having thus performed, the well-settled rule of the common law is that the bailee (artisan) who receives in bailment personal property under an express or implied contract to improve . . . it for remuneration, and enhances the value of such property by his

skill, labor, or materials . . . has a specific lien on such property. This lien may be enforced against the bailor while the property remains in the bailee's possession. . . . *Beck, supra,* 186 A.2d at 717.

The North Carolina statute at issue expands on the common law possessory lien in that the amount of the lien is for the entire amount owed on the contract, including the charges on those goods the possession of which may have been relinquished. Therefore, as of the Filing Date, Stevco was indebted to Stedman for approximately $112,000 based on Stedman's improvement of certain Stevco goods, some of which were still in Stedman's possession. *See In re the Duplan Corporation,* 440 F.Supp. 738, 740–41 (S.D.N.Y.1977).

■ Stevco's contention that Stedman's lien is a personal one contradicts established authority in North Carolina and elsewhere. The Supreme Court of North Carolina has consistently stated that the assignment of a debt carries the assignor's security with it. *High Point Casket Co. v. Wheeler,* 182 N.C. 459, 109 S.E. 378, 383 (1921) ("unless expressly prohibited by statute or in contravention of some principle of public policy, all ordinary business contracts are assignable, and that actions for breach of the same can be maintained by the assignee in his own name."); *Bank of Wadesboro v. Northwestern Casualty & Surety Co.,* 202 N.C. 148, 162 S.E. 236, 238 (1932) ("It is well settled as a principle of law that the assignment of a debt carries with it the security which the assignor has for the debt, and that the assignee has the benefit of such security.")

In *Horne-Wilson v. Wiggins Bros.* 203 N.C. 85, 164 S.E. 365 (1932) the North Carolina Supreme Court faced a question similar to the one now before this Court: "Can the assignee of a valid claim of a laborer and materialman file, perfect, and enforce a lien upon the land upon which said labor and material was performed and furnished?" 164 S.E. at 366. The defendant, in challenging the legal sufficiency of the assignment, averred that, as is claimed in the

instant case, the lien was personal to the laborer or materialman and that, as a matter of course, it could not be enforced by his assignee.

The court disagreed and cited *Independence Trust Co. v. Porter & Boyd,* 191 N.C. 672, 132 S.E. 806 (1926) for the conclusion that "(t)he general rule is that the assignment of a debt carries with it the security." *Horne-Wilson, supra,* 164 S.E. at 366. The court in *Horne-Wilson* also emphasized that the statutory lien was intended to benefit the laborers and materialmen. Therefore, the Court declined to penalize the right of assignment and allowed the security established for the payment of the debt to be so assigned. *Id.* 164 S.E. at 366. *See also Gillespie v. DeWitt,* 53 N.C.App. 252, 280 S.E.2d 736 (N.C.Ct.App.1981), *reh. denied,* 304 N.C. 390, 285 S.E.2d 832 (N.C.1981) (assignment operates as a valid transfer of title of chose in action and the assignee becomes the real party in interest who may maintain action thereon in his own name and acquires such right, title and interest as the assignor had at that time). 280 S.E. at 743.

The mere fact that the lawmakers did not specifically allow for the assignment of an artisan's lien does not indicate an intention to deny the right of lien assignment in view of the fact that no statute expressly denies that right. *National Bond & Investment Co. v. Midwest Finance Co.,* 156 Kan. 531, 134 P.2d 639, 642 (1943).

### B. The Determinative Issue: The Extension of Credit From Stedman to Stevco

The determinative issue before the Court is one not addressed by either party in this case, to wit: whether the agreement by Stedman to extend credit beyond the dates of its release of Stevco goods voids the artisan's lien claimed by Stedman and, by way of assignment, by NCNB.

The previous discussion, though determinative of the central issues presented by the parties to this case, is not determinative of the motion before the Court. It is uncontroverted that Stedman extended credit to Stevco beyond the delivery date of the Stevco goods. NCNB itself has stated that "(w)hen the processing was completed, at the instruction of Stevco, *Stedman shipped the goods and invoiced the costs* of improvement to Stevcoknit Fabrics, Inc....." (emphasis added). *See* NCNB's Memorandum of Law, p. 3. In addition, the payment terms were clearly stated on each Stedman invoice to be "NET 30 DAYS." *See* Brady Affidavit, Exhibit G.

This extension of credit is inconsistent with the artisan's common law right to a lien. As the Fourth Circuit has stated: "The lien given the artisan or worker upon property upon which he worked, for the amount due him for the work done, is clearly established in common law, but possession of the property is essential to the lien. Surrender of possession and the giving of credit to the owner of the property destroyed the lien." *Clark Brothers & Co. v. Pou,* 20 F.2d 74, 76 (4th Cir.1927). The *Clark* court went on to cite *Randel v. Brown,* 2 How. 406, 11 L.Ed. 318 (1844) where the Supreme Court stated that where either "the expressed terms or the clear intent of the contract" are inconsistent with a lien, a lien cannot arise. *Clark, supra* at 76. Significantly, the Court in *Clark* also noted:

> A special contract to accept a particular mode of payment of a demand, to which a right of lien would otherwise attach, or to give a time or credit for the payment, is inconsistent with a claim to retain the possession of the property until a payment is made, and consequently there is no right of lien in such a case."

*Id.* at 76 (citing 19 *American & English Encyclopedia of Law* at 12 and cases cited therein).

A recent decision by Judge Edward Ryan of this court in *In re First Hartford Corporation (A.L.U. Textile Combining Corp. v. First Hartford Corp.),* 10 B.R. 986 (Bkrtcy. S.D.N.Y.1982) reiterates this principle. Further, the Second Circuit has also adopted this principle:

> "If the contract of bailment provides for redelivery before payment is due, no lien

arises because it is apparent that the bailee has extended credit and has not relied upon the existence of a lien to receive payment."

*Newark Slip Contracting Co. v. New York Credit Men's Adjustment Bureau,* 186 F.2d 152, 153–54 (2d Cir.1951) (*citing Stone v. Allied Clothing Corp.,* 140 N.J.Eq. 224, 54 A.2d 625 (N.J.1947); *See also Matter of R.I. Newport and Co., Inc.,* 10 B.R. 436 (Bkrtcy. S.D.N.Y.1981).

It is not a pertinent fact that some of the Stevco goods still remain in the possession of Stedman. The crucial fact is that the agreement between Stevco and Stedman allowed for the extension of credit and, therefore, did not rely on the possession of the goods to facilitate payment collection. The very existence of a credit relationship between Stevco and Stedman is inconsistent with an artisan's lien. *See In re Tele King Corporation,* 137 F.Supp. 633, 634 (S.D.N.Y. 1955); *In re Heinsheimer,* 214 N.Y. 361, 366, 108 N.E. 636, (1915) (where Justice Cardozo stated: "If the work is done, not on the credit of the thing itself, but solely on the credit of the owner, there is a waiver of the lien."); *Wiles Laundry Company v. Hahlo,* 105 N.Y. 234, 242, 11 N.E. 500 (1887). *See also Welcome Home Center, Inc. v. Central Chevrolet Co., Inc.,* 272 S.C. 166, 249 S.E.2d 896 (1978). Thus, the extension of credit by Stedman to Stevco as evidenced by their prior practice and the payment terms as listed on the invoices clearly demonstrates that Stedman did not rely on possession of the goods for payment, but rather looked directly to Stevco.

III. *Conclusion*

Based on the foregoing, it is the conclusion of this Court that as of the Filing Date, NCNB had no assertable lien against the Stevco goods in the possession of Stedman covering the open $112,000 invoices. Therefore, NCNB's motion for summary judgment is denied. Because a motion for summary judgment searches the entire record, this Court grants summary judgment in favor of defendant Stevco.

It is SO ORDERED.