**In re Kenneth and Lisa D. BATES, Debtors.**

**No. 01 B 05696.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 12, 2001.

Erik A. Martin, Peter Bender, Erik A. Martin & Assocs., Chicago, IL, for debtors.

Randall Klein, David J. Chizewer, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Homeside Lending, Inc.

Arthur W. Friedman, Miller, Shakman & Hamilton, Chicago, IL, for Bonded Municipal Corporation.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 13 case is before the court on motions to enforce the automatic stay of 11 U.S.C. § 362(a) and to modify the debtors' plan. The motions raise a recurring problem in Illinois bankruptcy cases—the proper treatment of Illinois tax sales in Chapter 13. The debtors and their mortgagee seek (1) to enforce the automatic stay by annulling a deed to the debtors' home, obtained by the purchaser at an Illinois tax sale, and (2) to modify the debtors' Chapter 13 plan to provide for payment to the tax purchaser in lieu of the deed. As discussed below, (1) the purchaser at an Illinois property tax sale holds a "claim" that can be treated in a bankruptcy case and is subject to the automatic stay; but (2) such a claim exists only if the bankruptcy case is filed prior to the expiration of the redemption period provided by Illinois law, which is not the situation here; and (3) the automatic stay should be annulled if its enforcement would unfairly prejudice a creditor who, like the tax purchaser here, had no knowledge of the bankruptcy case giving rise to the stay. Accordingly, the pending motions must be denied.

### Findings of Fact

The facts relevant to the pending motion are not contested. Kenneth and Lisa Bates, the debtors in this case, reside with their four children in a home located at 8340 S. Paxton Ave. in Chicago. According to their bankruptcy schedules, the Bates both work at low-income jobs and supplement their income with food stamps and public aid. The Bates failed to pay $153 in real estate taxes imposed on their home for the year 1996, and, on February 5, 1998, a sale was conducted, pursuant to Illinois law, to enforce this tax obligation. The purchaser at the sale was an entity

identified only as "Partners"; Partners eventually assigned its rights under the sale to Bonded Municipal Corporation (BMC).

In addition to failing to pay their property taxes, the Bates were delinquent in paying a mortgage on their home, held by Homeside Lending, Inc. Following the tax sale, the Bates filed a series of Chapter 13 cases in an effort to cure their mortgage arrearage. The first case was filed on October 6, 1999, and dismissed on June 5, 2000; a second was filed on August 21, 2000, and dismissed on February 12, 2001. In each of these two cases, the ultimate cause of the dismissal was the Bates' continuing failure to make timely mortgage payments. A third case, the one now pending, was filed on February 21, 2001. In the first two cases, no creditor was scheduled in connection with the Bates' property tax liability, and there is no indication that Partners or BMC was aware of either of the cases while they were pending. In the present case, again, the tax liability was not scheduled, and neither Partners nor BMC were given notice of the case at the time of its filing.

From October 9 through October 11, 2000, while the Bates' second Chapter 13 case was pending, Partners published notice (1) of a petition for tax deed that it had filed earlier in the year and (2) of the expiration date of the redemption period allowed by Illinois law. On February 5, 2001, after expiration of the redemption period, but while the second Chapter 13 case was still pending, Partners filed an application in state court for an order directing the issuance of a tax deed. On March 6, 2001 during the pendency of the present case, and apparently after the assignment from Partners, BMC appeared at a state court hearing in support of Partners' application, and on March 29, the state court issued an order directing issuance of the deed. On May 2, the tax deed was issued to BMC.

On July 3, 2001, well after the issuance of the tax deed, the Bates filed a motion seeking (1) to annul the deed, on the ground that it was obtained in violation of the automatic stay; and (2) to modify their Chapter 13 plan so as to "cure the tax default" by paying BMC the "full amount of the indebtedness due ... under applicable state law." BMC first learned of the Bates' bankruptcy filings through this motion. On July 5, Homeside Lending filed a motion adopting the Bates' requests for relief and confirming that it had agreed to advance to the Bates the funds needed to pay BMC as proposed in the Bates' motion.

The relationship between BMC's actions and the Bates' bankruptcy may perhaps be seen more easily in a time line, as follows:

BMC responded to the pending motions with legal arguments, but raised no dispute regarding the relevant facts. On that basis, the court took the matter under advisement without further hearing.

## Jurisdiction

Jurisdiction over bankruptcy cases is placed exclusively in the district courts. 28 U.S.C. § 1334(a). However, district courts may generally refer bankruptcy cases to the bankruptcy judges of their district, pursuant to 28 U.S.C. § 157(a), and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference. Pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy judge presiding over a referred case has jurisdiction to enter appropriate orders and judgments in "core proceedings" within the case. Because the motions now before the court deal with the automatic stay and with plan confirmation, they are core proceedings under 28 U.S.C. § 157(b)(2)(G) and (L), as to which this court may enter final orders.

## Conclusions of Law

*Property tax collection in Illinois.* The system for collecting delinquent Illinois property taxes is set out in Articles 21 and 22 of the Illinois Property Tax Code, 35 ILCS 200 (2000). This system is described, with magisterial completeness, in Douglas M. Karlen & Rodney C. Slutzky, *Tax Collection and Methods of Enforcement*, in Real Estate Taxation (Ill. Inst. for Cont. Legal Educ. 1997) (hereafter *Karlen & Slutzky*).[1] *See also Phoenix Bond & Indemnity Co. v. Pappas*, 309 Ill.App.3d 779, 781–82, 723 N.E.2d 280, 281–82, 243 Ill.Dec. 248 (Ill.App.Ct.1999), and *McKeever v. McClandon* (*In re McKeever*), 132 B.R. 996 (Bankr.N.D.Ill. 1991) (citing to a prior codification). To understand the issues raised by the present case, five aspects of the collection system are particularly relevant:

(1) *Tax liens and personal liability of owners.* On January 1 of each year, a lien attaches to all non-exempt real property in Illinois, securing the payment of taxes levied by the county government on the property in that year. The lien has priority over all other liens (even liens prior in time) except for certain federal obligations. 35 ILCS 200/21–75; *Karlen & Slutzky,* § 5.2. In addition to the lien on the property, the owner of the property on January 1 is personally liable for the taxes levied during the year, and is subject to a civil action by the county to enforce the liability. 35 ILCS 200/9–175, 21–440; *Karlen & Slutzky,* § 5.48.

(2) *Annual tax sales.* If the real estate taxes levied on real property are not paid, the county can recover the taxes through various forms of tax sales. *Karlen & Slutzky,* §§ 5.26–5.47. The type of sale involved in the present case was an "Annual Tax Sale," conducted pursuant to 35 ILCS 200/21–205 through 21–250. What is offered at such a sale is not a deed to the property, but rather a certificate of purchase, which can be exchanged for a deed only if the property is not redeemed. *Karlen & Slutzky,* §§ 5.49–5.51. Instead of bidding a purchase price for the property, based on its value, all would-be tax purchasers agree to pay the same amount—the outstanding taxes (with accrued interest and certain fees)—and compete only in bidding down the penalty that they are willing to accept upon repayment of that amount in redemption. Bidding on the penalty (which is assessed every six months) starts at 18%, and can be bid down as low as zero. 35 ILCS 200/21–215; *Karlen & Slutzky,* § 5.27. The annual sale, with the issuance of the certificate of purchase, also results in the termination of

---

1. The Karlen & Slutzky work is available in the Westlaw database, identified as "RET IL– CLE 5–1."

the property tax lien. 35 ILCS 200/21–75 (lien only remains "until the property is sold under this Code"); *Karlen & Slutzky,* § 5.5.

(3) *Sales in error.* The Property Tax Code lists several grounds that require the court to order a tax sale canceled, as having been conducted in error, with the result that the tax purchaser becomes entitled to a full refund of the payment made to obtain the certificate of purchase (usually with interest). 35 ILCS 200/21–310 through 21–320; *Karlen & Slutzky,* §§ 5.54–5.61. To the extent that a refund is not paid by the taxing authority, the owner of the property is liable to pay it. 35 ILCS 200/21–340.[2] The grounds for finding a "sale in error" include the filing of a petition under Chapters 7, 11, 12, or 13 of the Bankruptcy Code (Title 11, U.S.C.) by or against an owner of the property. If the bankruptcy petition was filed prior to the tax sale, then either the county or the tax purchaser may assert the sale in error. 35 ILCS 200/21–310(a)(6). If the bankruptcy petition was filed after the tax sale, only the tax purchaser may make such an assertion—thus giving the purchaser the choice of taking a refund or pursuing the certificate of purchase despite the pending bankruptcy. 35 ILCS 200/21–310(b)(1); *Karlen & Slutzky,* § 5.73 ("[I]nstead of worrying about the effect of a pending bankruptcy on his rights, a tax purchaser or assignee has the option of walking away from the property while suffering no loss."). If a sale in error is ordered, the property (and the landowner) are again subject to liability for the unpaid taxes. 35 ILCS 200/21–310(b)(1); *Karlen & Slutzky,* § 5.73 ("[W]ith any sale in er-

ror, ... the property becomes tax delinquent again, and the taxes formerly included in the sale must be paid, enjoined, or satisfied in some other fashion.").

(4) *Redemption.* If a tax sale is not canceled as a sale in error, the tax purchaser has the right to obtain a tax deed to the property unless the property is redeemed within the time specified by law. For an occupied single-family home, such as involved in this case, the period of redemption is two years and six months from the date of the tax sale, and the tax purchaser has the option of extending the redemption period for up to three years from the sale. 35 ILCS 200/21–350(b), 21–385; *Karlen & Slutzky,* § 5.49. Redemption may be made by the landowner, or by other parties with an interest in the property, such as mortgagees. 35 ILCS 200/21–345; *Karlen & Slutzky,* § 5.69. The amount required for redemption is basically the price paid by the tax purchaser, plus a penalty (at the rate bid in the tax sale) assessed at the beginning of every six months during the redemption period. *Karlen & Slutzky,* § 5.68; 35 ILCS 200/21–355. Redemption can be accomplished informally, by payment of the required amount directly to the tax purchaser in exchange for the certificate of purchase, or formally, by payment to the county clerk, who is then required to transfer the redemption funds to the tax purchaser. *Karlen & Slutzky,* § 5.68; 35 ILCS 200/21–355.

(5) *Tax deeds.* Even if there is no sale in error or redemption, the tax purchaser (or its assignee) does not automatically receive a deed to the property covered by

---

**2.** The statute provides, in relevant part: "[W]hen the purchaser or assignee of a certificate of purchase that has been declared an erroneous sale, has paid any tax or special assessment upon the property sold, which was not paid by the owner of the property

and was not refunded to the tax purchaser or assignee by the county, the purchaser or assignee may recover from the owner the amount he or she paid, with 10% interest, as money paid for the owner's use."

a certificate of purchase. Rather, within three to five months before the expiration of the redemption period, the tax purchaser must (a) file a petition with the state court, requesting issuance of a tax deed, and (b) provide for three separate forms of notice to the owners and other parties interested in the property, informing them of the petition, the last date for redemption, and certain information regarding redemption. 35 ILCS 200/22–15 through 22–30; *Karlen & Slutzky,* § 5.79. Then, following the expiration of the redemption period, the tax purchaser must apply to the state court for an order directing the issuance of a tax deed, and then appear at a hearing on the application. 35 ILCS 200/22–30, 22–40; *Karlen & Slutzky,* §§ 5.90–5.91. Only after these steps have been accomplished may the court issue an order for the tax deed to issue from the county clerk. *Karlen & Slutzky,* §§ 5.92–5.93. Finally, in the absence of circumstances giving rise to tolling, the tax purchaser must both obtain the deed and record it, within one year of the expiration of the redemption period, or "the certificate or deed, and the sale on which it is based, shall … be absolutely void with no right to reimbursement." 35 ILCS 200/22–85; *see Karlen & Slutzky,* § 5.93.

*The treatment of Illinois property tax sales in bankruptcy.* The property tax collection procedures outlined above have caused considerable confusion in bankruptcy proceedings. In particular, one of the matters raised by the pending motions— the impact on tax sales of the automatic stay (set out in § 362(a) of the Bankruptcy Code)—has produced conflicting results. One line of decisions, including *Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. 156 (N.D.Ill.1994), holds that the automatic stay is completely inapplicable to the actions of a tax purchaser to enforce its rights against the property of a debtor in bankruptcy. Another line of decisions,

including *In re Winters,* No. 93–7381, 1995 WL 453053 (N.D.Ill. July 28, 1995), holds that the automatic stay is fully applicable to such enforcement actions. Neither of these lines of authority, however, presents a complete analysis. Viewed as a whole, the bankruptcy treatment of Illinois tax sales involves the following five features:

- An Illinois tax sale leaves a property tax claim that is not extinguished, for purposes of bankruptcy, until the expiration of the period of redemption.

- As long as a bankruptcy case is filed prior to the expiration of the redemption period, the post-tax sale claim can be treated like other secured claims in bankruptcy.

- The action of a tax purchaser in applying to the state court for an order directing the issuance of a tax deed would violate the automatic stay, as an act to obtain property of the estate or enforce a lien.

- The actions of a tax purchaser in filing a petition for tax deed and giving notice of the expiration of the period of redemption, required by state law to maintain the right to a tax deed, are excepted from the automatic stay by § 362(b)(3) of the Bankruptcy Code.

- After the redemption period has ended, there is no property tax claim that can be treated in bankruptcy, and the automatic stay, though technically applicable, serves no substantial purpose, and should be terminated at the request of the tax purchaser to allow issuance of the tax deed.

These features, each discussed below, provide the basis for decision in the present case.

■ (1) *The existence of a bankruptcy claim after an Illinois tax sale.* The concept of "claim," defined by § 101(5) of the Bankruptcy Code, is central to the opera-

tion of the Code. First, claims in bankruptcy are required to be paid—in a Chapter 7 case, to the extent possible from the assets of the estate, pursuant to § 726 of the Code, and in a Chapter 13 case, as directed by the terms of the debtor's plan, subject to §§ 1322 and 1325 of the Code. Second, the debtor's liability on claims—which the Code refers to as "debts," pursuant to § 101(12)—are subject to being discharged (in Chapter 13, under § 1328). Third, "liens"—defined in § 101(37) as a charge against property to secure the payment of debts (i.e., liability on claims)—may be avoided or modified under various provisions of the Bankruptcy Code, including, in Chapter 13, § 1322(b)(2). And finally, the automatic stay of § 362(a) provides, in several different ways, that creditors may not pursue satisfaction of claims or enforcement of liens while a bankruptcy case is pending. In short, if an obligation of the debtor is a claim, it can be treated in the debtor's bankruptcy—with payment, lien avoidance, and discharge possible, protected by the automatic stay—otherwise, if the obligation is not a claim, bankruptcy treatment is unavailable. See In re CMC Heartland Partners, 966 F.2d 1143, 1146–47 (7th Cir.1992) (distinguishing between environmental obligations that were claims—and so discharged in bankruptcy—and those that were not). Accordingly, the initial question in determining the impact of bankruptcy on Illinois property tax sales is whether, after a tax sale, a claim exists for purposes of bankruptcy.

■ The Bankruptcy Code employs the "broadest available definition" of claim, *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991), promoting the purposes of fairly distributing the assets of a debtor's estate to all creditors and allowing the debtor a fresh start. *California Dept. of Health*

*Serv. v. Jensen (In re Jensen)*, 995 F.2d 925, 929–30 (9th Cir.1993); *In re Piper Aircraft Corp.*, 162 B.R. 619, 629 (Bankr. S.D.Fla.1994), *aff'd* 168 B.R. 434 (S.D.Fla. 1994). The Code's definition of claim is in two parts. The first, set out in § 101(5)(A), is "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Consistent with the purposes underlying the Code's broad definition, the Supreme Court has interpreted "right to payment" in § 101(5)(A) expansively, avoiding technical distinctions as to the nature of the "right" to payment necessary to create a bankruptcy claim, and focusing instead on the consequences to the debtor of nonpayment. In *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), a Chapter 13 debtor had been convicted of a crime prior to filing his bankruptcy case, and, as a condition of parole, had been ordered to make a restitution payment. No legal process could be maintained to obtain a judgment for the restitution, but if the debtor failed to pay it, he could be imprisoned. The Supreme Court held that the potential for imprisonment was sufficient to establish a right to payment of the restitution amount, and hence to render the condition of paying restitution a claim in bankruptcy:

Although neither the Probation Department nor the victim can enforce restitution obligations in civil proceedings ... the obligation is enforceable by the substantial threat of revocation of probation and incarceration. That the Probation Department's enforcement mechanism is criminal rather than civil does not alter the restitution order's character as a "right to payment." Indeed, the right created by such an order made as a condition of probation is in some sense

greater than the right conferred by an ordinary civil obligation, because it is secured by the debtor's freedom rather than his property. Accordingly, we do not regard the purpose or enforcement mechanism of restitution orders as placing such orders outside the scope of § 101(4)(A) [now § 101(5)(A) ].

495 U.S. at 559–60, 110 S.Ct. at 2131.[3]

■ Like the Pennsylvania probation revocation process in *Davenport,* the Illinois tax sale process attempts to obtain payment (of the redemption amount) without using civil process. *See City of Chicago v. City Realty Exchange, Inc.,* 127 Ill. App.2d 185, 190, 262 N.E.2d 230, 233 (Ill. App.Ct.1970) (the tax purchaser's certificate of purchase creates "a charge on the real estate for payment of the debt represented by the taxes"); *Karlen & Slutzky,* § 5.5 ("[A] tax sale shifts the in rem lien of the taxes from the county to the tax purchaser, who may then enforce the lien

through tax deed proceedings."). Thus, the tax purchaser holds a claim against a debtor in bankruptcy—a "right to payment" enforced by potential loss of the debtor's home—under § 101(5)(A).

Decisions holding that there is no bankruptcy claim after a tax sale, including most recently, *Blue v. Town of Lake Building Corp. (In re Blue),* 247 B.R. 748 (Bankr.N.D.Ill.2000), note that, under Illinois law, a tax purchaser cannot use legal process to force the landowner to pay the tax liability—that the right of the tax purchaser is limited to obtaining a tax deed if the landowner fails to reimburse the payment of taxes through redemption.[4]

However, as in *Davenport,* the alternative enforcement mechanism of the Illinois property tax system is no less effective than civil process would be. A landowner's duty to pay the redemption amount is no different from a landowner's duty, en-

---

**3.** The *Davenport* decision thus recalls Oliver Wendell Holmes' famous essay about the fallacy of "consider[ing] the right or the duty as something existing apart from and independent of the consequences of its breach." Oliver Wendell Holmes, *The Path of the Law,* 110 Harv. L.Rev. 991, 992 (1997) (reprinting Holmes' 1897 address at the dedication of a new hall of the Boston University School of Law). In Holmes' view, "a legal duty ... is nothing but a prediction that if a man ... omits certain things he will be made to suffer in this or that way by judgment of the court;—and so of a legal right." *Id.*

**4.** This point was emphasized by the Illinois Supreme Court in *A.P. Properties, Inc. v. Goshinsky,* 186 Ill.2d 524, 530, 714 N.E.2d 519, 522, 239 Ill.Dec. 600 (Ill.1999):

[T]he procedure set forth in the [Illinois Property Tax] Code establishes a debtor/creditor relationship between the [tax] purchaser and the county (see, *e.g.,* 35 ILCS 200/21–240, 21–260 (West 1996)) and a debtor/creditor relationship between the county and the landowner (see, *e.g.,* 35 ILCS 200/21–440 (West 1996)). Nowhere, however, does the Code establish such a

relationship between the landowner and the purchaser. In fact, the Code goes to great lengths to ensure that no such relationship exists between the landowner and the purchaser. Simply put, no set of facts exists or could exist that would allow [the tax purchaser] to collect money from ... [the landowner].

Based on this understanding, the Illinois Supreme Court held that the tax purchaser was not a "creditor" under the Uniform Fraudulent Transfer Act (because it held no enforceable right to payment), and so lacked standing to assert that the landowner had transferred his property for inadequate consideration. Of course, the court's interpretation of Illinois' enactment of the UFTA as requiring a civil enforcement mechanism in order for a claim to exist cannot control the definition of "claim" under the Bankruptcy Code. In *Davenport,* the U.S. Supreme Court expressly rejected the argument that there was no bankruptcy claim in the context of criminal restitution because "neither the Probation Department nor the victim stands in a traditional creditor-debtor relationship with the criminal offender." 495 U.S. at 558, 110 S.Ct. at 2130–31.

forceable in an in rem civil action, to pay a nonrecourse mortgage. In either situation, the landowner has no direct personal obligation to make payment, but the consequence of nonpayment is loss of the landowner's property. Reflecting the same broad interpretation applied in *Davenport*, the Supreme Court has explicitly held that nonrecourse mortgages are "claims" under the Bankruptcy Code. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Indeed, the penalty attached to nonpayment in the tax sale context may be substantially more coercive than that attached to a mortgage. In an ordinary civil mortgage foreclosure, when the debtor's home is sold, the debtor receives any sale proceeds in excess of the amount owed. In the Illinois tax sale process, a debtor who fails to redeem loses all equity in the home, regardless of how much was owed in taxes. This "substantial threat" creates a right to payment—a claim for purposes of bankruptcy—on behalf of the tax purchaser, despite the absence of a right to enforce payment by civil process.

■ Moreover, a bankruptcy claim under § 101(5)(A) is also held by the county which levied the property taxes, because it continues to have a contingent right to payment from the landowner following the tax sale. If a sale in error is declared, all of the county's remedies against the landowner are reinstated, including direct civil enforcement against the landowner. 35 ILCS 200/21–310(b)(1); *Karlen & Slutzky*, § 5.73. This contingency is far from remote, since a sale in error may be declared at the option of the tax purchaser whenever the landowner is involved in a bankruptcy case prior to the issuance of a tax deed. Indeed, the Illinois Supreme Court has recognized that, following a tax sale, there continues to exist "a debtor/creditor relationship between the county and the land-

owner." *A.P. Properties, Inc. v. Goshinsky*, 186 Ill.2d 524, 530, 714 N.E.2d 519, 522, 239 Ill.Dec. 600 (Ill.1999).

A final reason for the existence of a claim after an Illinois tax sale comes from the second part of the definition of "claim." Section 101(5)(B) of the Code defines claim as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." The Seventh Circuit interpreted this part of the definition of claim in *In re Udell*, 18 F.3d 403, 408 (7th Cir.1994), in the context of a debtor's obligation under a restrictive covenant:

> [W]e hold that a right to an equitable remedy for breach of performance is a "claim" if the same breach also gives rise to a right to a payment "with respect to" the equitable remedy. If the right to payment is an "alternative" to the right to an equitable remedy, the necessary relationship clearly exists, for the two remedies would be substitutes for one another.

An Illinois tax sale presents a situation much like the one described in *Udell's* holding. Prior to the tax sale, the landowner has an obligation to pay the delinquent property taxes. At the sale, the tax purchaser makes a conditional payment of the taxes, refundable in the event the landowner files bankruptcy. In exchange, the tax purchaser receives the right to alternative remedies against the landowner: either a court order directing issuance of a deed to the property or else payment of the taxes (with whatever penalty was assessed at the sale) through redemption.

The remedies are plainly alternatives. Illinois law is clear that a tax purchaser has no right to issuance of a deed, and so is not harmed if the redemption payment

is made. *See, e.g., Monreal v. Sciortino,* 238 Ill.App.3d 475, 479, 606 N.E.2d 328, 331, 179 Ill.Dec. 496 (Ill.App.Ct.1992):

> The right of a holder of a tax certificate to receive a deed is subservient to the right of a person interested in the property to redeem. (*DuPage County Collector,* 98 Ill.App.3d at 952, 54 Ill.Dec. 301, 424 N.E.2d 1204.) "The mere failure of the tax certificate holder to get a deed does not injure him, since the purchaser recovers the amount paid for the certificate from the court after the redemption." (*DuPage County Collector,* 98 Ill.App.3d at 952, 54 Ill.Dec. 301, 424 N.E.2d 1204.)

Under § 101(5)(B), then, these alternative remedies also constitute a claim in bankruptcy.

In sum, the situation after a tax sale is one in which, for purposes of bankruptcy, the landowner owes two distinct claims on account of the delinquent property taxes: (1) to the tax purchaser, in the redemption amount, and (2) to the county, contingent on the tax purchaser's election to have a sale in error declared, in the amount of the unpaid taxes.

(2) *The allowable treatment of a post-tax sale claim in bankruptcy.* Given the existence of a bankruptcy claim after an Illinois tax sale, the next question is how the claim can be treated in the debtor's bankruptcy. A number of decisions have held (1) that the only permissible treatment of the claim is through redemption, pursuant to Illinois law, and (2) that the only impact of bankruptcy on the redemption process is under § 108(b) of the Bankruptcy Code, extending the time for redemption for 60 days after the bankruptcy filing, if it would otherwise have expired during that period. *See, e.g., Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. 156 (N.D.Ill.1994); *Tabor Enterprises, Inc. v. People of the State of Illinois,* 65 B.R. 42, 45 (N.D.Ohio 1986).

This view, however, cannot be reconciled with the applicable provisions of the Bankruptcy Code. The claim of a tax purchaser against a landowner who files a bankruptcy case is a "secured claim" under the Bankruptcy Code.[5] In Chapter 7, a trustee could satisfy this claim by selling the underlying collateral pursuant to § 363(f)(3) of the Code, and paying the tax purchaser the full amount of its claim, with interest pursuant to § 506(b) of the Code. The remaining proceeds would be available for distribution to other creditors.

In Chapter 13, the rights of holders of secured claims are generally subject to modification through the Chapter 13 plan, pursuant to § 1322(b)(2), as limited by § 1325(a)(5).[6] Section 1325(a)(5)(B) per-

---

**5.** Although the Bankruptcy Code does not expressly define "secured claim" § 506 of the Code—which governs the treatment of secured claims—deals with any claim "secured by a lien on property in which the estate has an interest." "Lien," in turn, is defined by § 101(37) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." Thus, a "secured claim" is a right to payment ("claim") that can be enforced against property in which the debtor had an interest at the outset of the bankruptcy case—because the debtor's interest passes to the estate at the time of filing, pursuant to § 541(a) of the Bankruptcy Code. The tax purchaser has precisely such a secured claim: a right to payment, as discussed above, which, under applicable state law, could be enforced against property that the debtor owned at the time the case was filed.

**6.** Section 1322(b)(2) contains a provision eliminating the right to modify the rights of holders of claims "secured only by a security interest in real property that is the debtor's principal residence." For such security interests, a Chapter 13 plan may only "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending," pursuant to § 1322(b)(5)—and there has been substantial controversy over the question of the point at which such per-

mits a secured claim to be satisfied by the creditor's retention of the lien while being provided a. stream of payments equal to the present value of the claim as of the effective date of the plan. The practical impact of § 1325(a)(5)(B) is to allow a secured claim to be paid, in installments, with interest, over the term of the plan. *Bellamy v. Federal Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176, 185–86 (2nd Cir.1992). There is no requirement that a lump-sum redemption be made. To the contrary, it is in Chapter 7 that redemption by lump sum payment is required of a debtor who wishes to retain collateral. The ability to retain collateral by paying the value of a secured claim in installments over the length of the plan is one of the incentives provided to encourage use of Chapter 13. *See In re Turner*, 156 F.3d 713, 716 n. 2 (7th Cir.1998) (installment payments in Chapter 13 are an alternative to lump sum redemption in Chapter 7); *GMAC v. Bell (In re Bell)*, 700 F.2d 1053, 1057 (6th Cir.1983) (same); *Ford Motor Credit Co. v. Lee (In re Lee)*, 162 B.R. 217, 223 (D.Minn.1993) ("One of the incentives Chapter 13 provides is to allow the modification of a secured party's rights, an option not available under Chapter 7."). Accordingly, the secured claim of a tax purchaser may be satisfied in a Chapter 13 case through a plan that provides for full payment of the claim, with interest, in installments over the life of the plan.

A Chapter 13 debtor, by virtue of the rights granted under the Bankruptcy Code, does not lose the rights that exist under state law. If a Chapter 13 debtor with property subject to an Illinois tax sale still had the right to redeem by a lump-sum payment at the time of the filing of the case, that right would remain after bankruptcy, and would be subject to the 60–day extension of § 108(b). However, nothing in § 108(b) transforms the extension of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code. The Seventh Circuit made this clear in *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1215 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984), where it found that § 108(b) could not limit the right to cure executory contracts specifically accorded by § 365 of the Code. Similarly, § 108(b) would not prevent a Chapter 7 trustee from selling property subject to a tax purchaser's claim under § 363(f)(3), and § 108(b) does not limit the right to modify secured claims specifically accorded by §§ 1322(b)(2) and 1325(a)(5).[7]

"cure of default" is no longer possible, a question now addressed in § 1322(c). However, the antimodification provision of § 1322(b)(2) and the related question regarding the requirements for "cure," have no application to the secured claim of a tax purchaser. The lien of a tax purchaser is not a "security interest" (defined in § 101(51) as a "lien created by an agreement"), but is rather a "judicial lien"—defined in § 101(36) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Judicial liens are fully subject to modification in Chapter 13, limited only by the requirements of § 1325(a)(5).

7. Decisions denying the right to modify the secured claim of a tax purchaser often refer to the Seventh Circuit's decision in *Goldberg v. Tynan (In re Tynan)*, 773 F.2d 177 (1985). *Tynan* was a case involving a home mortgage, subject to the anti-modification provision of § 1322(b)(2), and so the debtor's Chapter 13 plan was required to provide for "cure" of the mortgage default. The Seventh Circuit held that, under former Illinois mortgage law, this right to cure ended at the time of a mortgage foreclosure sale, since, at that time, "there is no 'mortgage' under which a Chapter 13 debtor can cure arrearages." 773 F.2d at 178. Thus, there was no way to treat the mortgage claim under the Bankruptcy Code, and the court held that the debtor was limited to exercising the relevant non-bankruptcy right of redemption accorded by state law, as

Claims in bankruptcy are assessed as of the date the bankruptcy case is filed. *See* 11 U.S.C. § 502(b) (requiring a court, in the event of an objection to a claim, to "determine the amount of such claim ... as of the date of the filing of the petition."). As long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case—through sale of the collateral in Chapter 7 or plan treatment in Chapter 13—even though the redemption period expires during the pendency of the case.

■ (3) *Application of the automatic stay to proceedings for issuance of a tax deed.* Because a Chapter 13 plan may properly provide for payment of a tax purchaser's claim in installments over the term of the plan—with the debtor retaining ownership of the property—it is essential that the tax purchaser not be allowed to obtain a tax deed while the debtor is performing under the plan. And the automatic stay, provided for in § 362(a) of the Bankruptcy Code, operates to prevent such a transfer of ownership. Three provisions of the automatic stay, § 362(a)(3)–(5), are particularly applicable, since they prohibit:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate; [and]

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title ...

Under these provisions, a tax purchaser plainly is prohibited from taking the final steps, after expiration of the redemption period, needed to obtain a tax deed: applying to the state court for an order directing the issuance of a tax deed, and appearing at a hearing on the application. 35 ILCS 200/22–30, 22–40; *Karlen & Slutzky,* §§ 5.90–5.91. If the property is considered property of the estate (as would certainly be the situation prior to plan confirmation, under § 541(a) of the Code), then such action would be part of an effort to exercise control over property of the estate, prohibited by § 362(a)(3). And, after confirmation, regardless of whether the property is considered property of the debtor or property of the Chapter 13 estate—a question that has sometimes proven difficult to resolve [8]—a tax purchaser is prohibited by § 362(a)(4) and (5) from taking any action to enforce its interest in the property (a "lien" under § 101(37)). Of course, the tax purchaser is entitled to seek relief from the automatic stay under § 362(d), but in the absence of such relief, direct action to obtain issuance of a deed is prohibited. Nearly all of the reported decisions dealing with the question have so held, either directly or by implication. *See, e.g., In re Winters,* No. 93–7381, 1995 WL 453053, *5–*6 (N.D.Ill. July 28, 1995) (voiding a tax deed obtained in violation of

---

extended by § 108(b) in bankruptcy. *Id.* at 179. This holding has no application to the situation of a property tax claim following an Illinois tax sale. The issue here is the right to modify a secured claim, not to cure a mortgage default, and, as set forth above, there is a claim outstanding in connection with a tax sale that is subject to treatment in the bankruptcy.

**8.** For examples of different views on the subject, see *In re Fisher,* 198 B.R. 721 (Bankr. N.D.Ill.1996), *rev'd,* 203 B.R. 958 (N.D.Ill. 1997) and *Black v. United States Postal Service (In re Heath),* 115 F.3d 521 (7th Cir.1997).

the stay); *In re Wells Properties, Inc.*, 102 B.R. 685, 691 n. 3 (Bankr.N.D.Ill.1989) (stating that relief from stay is required for issuance of a tax deed); *Blue v. Town of Lake Building Corp. (In re Blue)*, 247 B.R. 748, 752 (Bankr.N.D.Ill.2000) (granting relief from stay to allow issuance of a tax deed). Karlen and Slutzky put the matter succinctly:

> After a tax sale, the [property tax] lien is represented by the certificate of purchase, and the tax purchaser or assignee must take certain statutorily required steps in order to enforce the lien through tax deed proceedings. If the tax purchaser fails to obtain a tax deed, the lien will expire in time. It appears, therefore, that the true nature of tax enforcement procedures in Illinois could fall into several of the subsections of § 362(a) of the Bankruptcy Code and, hence, ought to be stayed by a pending bankruptcy.

*Karlen & Slutzky,* § 5.73.

■ One of the few reported decisions rejecting this analysis, *Jackson v. Midwest Partnership (In re Jackson)*, 176 B.R. 156, 159 (N.D.Ill.1994), held that the automatic stay was inapplicable to proceedings to obtain a tax deed "because the debtor's rights ... to the property were subject to ... perfection under sections 362(b) and 546(b) of the bankruptcy code." Section 362(b)(3) does indeed exclude from the coverage of the automatic stay "any act to perfect ... an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)." However, enforcement of a security interest in property by obtaining a deed to the property is not an act to "perfect" a property interest. "Perfection," although not defined by the Bankruptcy Code, has a well accepted meaning in the law of secured transactions—it refers to the steps necessary to obtain priority over other creditors claiming an interest in collateral. *See, e.g., In re Cadwell's Corners Partnership*, 174 B.R. 744, 753 n. 9 (Bankr.N.D.Ill.1994) ("To 'perfect' a lien is to place the world on notice so that the [lienholder] has an interest superior to that of third party creditors in the pledged property. Perfection thus establishes priority without a determination as to title."); *In re Vienna Park Properties*, 136 B.R. 43, 51 (S.D.N.Y.1992), *aff'd*, 976 F.2d 106 (2nd Cir.1992) (" '[P]erfection' refers to the process by which a secured party puts third-parties on notice of its interest, whereas 'enforcement' refers to the steps the secured party must take to realize its rights in the collateral ..."). Accordingly, § 362(b)(3) provides no exception to the automatic stay for the issuance of tax deeds. As long as the claim of a tax purchaser can be treated through a Chapter 13 plan, the automatic stay is effective to allow the plan to be carried out.

■ This result, however, does not eliminate the tax purchaser's right to a tax deed in the event its claim is not satisfied in a bankruptcy case. In Chapter 13, § 1325(a)(5) requires that a secured creditor's lien remain in place to secure the debtor's performance under the debtor's plan. *See Dewsnup v. Timm,* 502 U.S. 410, 430, 112 S.Ct. 773, 785, 116 L.Ed.2d 903 (1992) (describing § 1325(a)(5) as permitting modification of secured claims through plan payments "if creditors retain liens securing such payments."). Thus, if the debtor fails to make the required plan payments, the tax purchaser may enforce its state law lien rights. Moreover, the right to a deed is not defeated by any bankruptcy-imposed delay. Although Illinois law requires that a tax purchaser obtain and record a tax deed within one year after the redemption period expires, this period is tolled during any time that the purchaser is "prevented from obtaining

a deed by injunction or order of any court." 35 ILCS 200/22–85. Moreover, § 108(c) of the Bankruptcy Code extends, until 30 days after the expiration of the automatic stay, the time for taking any action required by non-bankruptcy law to commence or continue a civil action on a claim against the debtor. Under both Illinois law and the Bankruptcy Code, then, a tax purchaser would be able to obtain a deed if its claim was not paid through the debtor's Chapter 13 plan.

■ (4) *Exception from the stay for filings and notices required to maintain the tax purchaser's right to a deed.* Although the automatic stay prohibits a tax purchaser from obtaining a tax deed during the pendency of a bankruptcy case, not all of the steps necessary to obtain the deed are prohibited. The initial filing of a petition for tax deed and notices of the expiration of the redemption period, 35 ILCS 200/22–10 through 22–30, do not result directly in the issuance of a deed, but are needed to preserve the tax purchaser's right to do so. The petition filing and notices—required within three to five months of the expiration of redemption—are a statutory prerequisite for the application and hearing that actually result in issuance of the deed. *See Karlen & Slutzky,* §§ 5.79–5.80.

As such, these procedures fall within the "perfection" exception to the automatic stay contained in § 362(b)(3) of the Bankruptcy Code. As noted above, § 362(b)(3) allows a creditor to take actions to perfect a security interest if the trustee would be subject to the action under § 546(b) of the Code. Section 546(b), among other things, applies to situations where state law permits "maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C. § 546(b)(1)(B). This is precisely the situation with respect to the petition filing and notices required of tax purchasers by Illinois law. The tax purchaser's property interest is superior to all other non-federal claims as of the tax sale, and would retain that priority as to parties obtaining interests after the tax sale as long as the required petition is filed and the required notices are given. Moreover, it has been recognized that the perfection exception would be applicable in the analogous situation of a U.C.C. continuation statement. 3 Collier on Bankruptcy ¶ 362.05[4] (15th ed. rev.2001).

■ (5) *The effect of expiration of the redemption period prior to a bankruptcy filing.* The discussion of bankruptcy and Illinois tax sales, set out above, considers only the situation of a bankruptcy case filed during the period of redemption allowed by Illinois law. If a bankruptcy case is filed after the expiration of the redemption period, the situation is different. After the redemption period expires, the landowner can no longer avoid the issuance of a tax deed by paying the redemption price. In effect, the tax purchaser has a right to the debtor's property, contingent only on the tax purchaser's complying with the necessary procedures within the required time. Thus, transfer of the property to the tax purchaser is no longer a consequence of nonpayment by the debtor, and payment is no longer an alternative form of relief to transfer of the property. In effect, a transfer of the landowner's rights occurs at the end of the redemption period if a bankruptcy is not in place.[9] Under these circumstances, there

---

9. Several decisions have accordingly recognized that the expiration of the redemption period, prior to a bankruptcy filing, effects a transfer of the debtor's rights in the property

is no "claim" (or "right to payment" under § 101(5) of the Bankruptcy Code) that can be treated in the bankruptcy case.

■ With no potential for claim treatment in a bankruptcy filed after expiration of the redemption period, the impact of the automatic stay is also different. Although the stay would still apply to prohibit actions to obtain a tax deed (as an action to obtain control over property of the estate), there would be cause for the stay to be terminated by the bankruptcy court under § 362(d), since the creditor could not be required to accept payment through the bankruptcy case in lieu of its right to the property. *Cf. In re Wells Properties, Inc.,* 102 B.R. 685, 691 n. 3 (Bankr.N.D.Ill.1989) (once the tax purchaser's right to a deed is fixed, the purchaser should have "little difficulty" in obtaining relief from the automatic stay).[10]

■ *Application to the pending case.* Based on the principles set out above, the questions raised by the motions now pending before the court can be answered: (1) did the actions of BMC and its predecessor to enforce their tax sale rights against the Bates violate the automatic stay so as to require a declaration that BMC's tax deed is void, and (2) do the Bates have a right to retain their property through a modification of their Chapter 13 plan? A review of the relevant events indicates that the Bates are entitled to neither of the forms of relief sought in the pending motions.

First, while the Bates' second bankruptcy was pending, BMC's predecessor filed a petition for tax deed and gave notice of the expiration of the redemption period. As discussed above, these actions are excepted from the stay under § 362(b)(3), and so the Bates are not entitled to avoidance of the tax deed on this account.

■ Second, one week before the second bankruptcy case was dismissed, BMC's predecessor filed an application for issuance of the tax deed. This application was filed in violation of the automatic stay, and enforcement of the stay could result, as the Bates now request, in a declaration that the tax deed is void. *Far Out Productions, Inc., v. Oskar,* 247 F.3d 986 (9th Cir.2001). However, § 362(d) of the Bankruptcy Code allows annulment of the automatic stay for cause, and under this provision, it is recognized that courts may grant retroactive relief from the stay on equitable grounds. *National Environmental Waste Corp. v. City of Riverside (In re National Environmental Waste Corp.),* 129 F.3d 1052, 1054–55 (9th Cir.1997). In particular, annulment is appropriate where the creditor who took action in violation of the stay had no knowledge of the bankruptcy and would be unfairly prejudiced by stay enforcement. *See In re Lipuma,* 167 B.R. 522, 526 (Bankr.N.D.Ill.1994). The circumstances involving the application for issuance of a tax deed in this case plainly support stay annulment. BMC's predecessor had no knowledge of the case (and hence of the automatic stay) at the time it filed its application. If it had known of the

---

for purposes of fraudulent transfer analysis under § 548 of the Bankruptcy Code. *See, e.g., Moureau v. Glen Investments (In re Moureau),* 147 B.R. 441 (Bankr.N.D.Ill.1992); *McKeever v. McClandon (In re McKeever),* 132 B.R. 996 (Bankr.N.D.Ill.1991); *see also Karlen & Slutzky,* § 5.105 (collecting authorities and opining that "the *McKeever* and *Moureau* courts are correct in terms of fixing the date of the crucial transfer.").

**10.** In the footnote cited above, the *Wells Properties* decision also states that there is no "claim" that can be treated in bankruptcy after a tax sale. For the reasons set forth above, that statement is only correct if the bankruptcy case is filed after the expiration of the redemption period.

case, it could obviously have obtained relief from the stay, because the Bates' plan had made no provision for payment of the tax claim. Moreover, BMC's application for deed could just as well have been filed a week later, after the case had been dismissed and the stay terminated under § 362(c)(2). It would be manifestly prejudicial to BMC for the stay to be enforced under these circumstances.

Third, during the present case, BMC appeared in state court in support of the application of issuance of a tax deed, and obtained the deed. Again, this activity was in violation of the automatic stay, but again, annulment would be proper. The period for redemption expired before the present case was filed, and thus, there was no claim for property taxes that could be treated in this case. BMC, had it known of the bankruptcy filing at the time, could have obtained relief from the automatic stay, as noted in *Wells Properties,* 102 B.R. at 691 n. 3. To undo the tax deed now would certainly be unfairly prejudicial.

Finally, and for the same reason, the Bates cannot amend their plan to pay BMC the redemption amount, since, at the time they filed the present case, the redemption period had expired and, accordingly, there is no longer a claim that can be treated in bankruptcy.

The final result is that, although treatment of a tax purchaser's claim through a Chapter 13 plan is possible, the Bates have not pursued that relief in a proper or timely fashion, and hence it is no longer available to them.[11]

### Conclusion

For the reasons set forth above, the debtors' motions to enforce the automatic stay and modify their plan are denied. A separate order to that effect will be entered.[12]

---

11. The Bates have indicated, in argument on their motions, that if the motions are denied they will pursue avoidance of BMC's tax deed under § 548 of the Bankruptcy Code. *See Moureau v. Glen Investments (In re Moureau),* 147 B.R. 441 (Bankr.N.D.Ill.1992); *McKeever v. McClandon (In re McKeever),* 132 B.R. 996 (Bankr.N.D.Ill.1991). Such an action would raise numerous issues not dealt with in this opinion.

12. The denial of the Bates' motions is predicated, as discussed above, on the availability of annulment of the automatic stay, pursuant to § 362(d). Section 362(d) provides for relief "[o]n request of a party in interest and

after notice and a hearing." Because BMC, relying on *Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. 156 (N.D.Ill.1994), took the position that the automatic stay was inapplicable to enforcement of a tax purchaser's right, it never filed a formal motion for annulment. However, it did request such relief, in the alternative, in its briefing, and all of the matters relevant to determining such a request have been presented to the court. Thus, it would be wasteful of the resources of the parties and the court to require BMC to file a formal motion for annulment. Accordingly, the court will include a declaration of annulment in the dispositive order.