**In re MIDWAY AIRLINES, INC., Midway Airlines (1987) Inc., Midway Aircraft Engineering, Inc., Debtors.**

Bankruptcy Nos. 91 B 06449, 91 B 06450, 91 B 06451.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 17, 1994.

Cynthia G. Swiger, Field, Golan & Swiger, Chicago, IL, for CAMCO, Inc., et al.

Sheldon L. Solow, Charles P. Shulman, Sachnoff & Weaver, Chicago, IL, for Midway Airlines, Inc., et al., debtors.

M. Scott Michel, Chicago, IL, U.S. Trustee.

### *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the Trustee, Sheldon L. Solow's motion for summary judgment in opposition to the motion to modify the automatic stay brought by CAMCO Incorporated ("CAMCO"), CAMCO Connecticut (a division of CAMCO), Texas CAMCO Incorporated, Avmar Incorporated, Ardco Incorporated, and Aircraft Turbine Service, Incorporated (collectively referred to as "UNC") against Midway Airlines, Inc., Midway Airlines (1987) Inc., and Midway Aircraft Engineering, Inc. (collectively referred to as "Midway"). For the reasons stated herein, the Trustee's motion is denied and the remaining disputed issues of fact on UNC's motion will be tried as previously set.

### I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States

District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## II. *FACTS AND BACKGROUND*

Commencing in the mid–1980s, UNC performed repair, testing and overhaul services on airplane engine parts for Midway. Midway sent the parts to UNC, who evaluated what services it thought were required, called Midway to recommend the services and the price thereof, and then repaired the parts in accordance with Midway's directions. UNC sent invoices to collect the amounts due. UNC relies on various statutory artisan's liens under New York, Texas and Florida law as the basis of the contention that it has valid possessory liens on the various parts it holds in those states.

The Trustee's motion attacks UNC's assertion that it has a secured claim against the parts under the various cited statutes on which UNC relies. The Trustee counters that the UNC invoice terms stated either "NET 30 DAYS" or "2% NET 30 DAYS." Often UNC sent the repaired parts back to Midway before the invoices were paid. Midway rarely paid the invoices within thirty days. Payment usually occurred 60 to 80 days following Midway's receipt of an invoice. The Trustee states UNC dealt with Midway solely on a credit basis. There were no written contracts or security agreements which granted UNC the right to use Midway's parts as security for outstanding obligations owed by Midway. Thus, the Trustee concludes that UNC's claimed statutory liens are eviscerated and defeated by the credit terms it gave Midway.

UNC denies that it dealt with Midway solely on a credit basis. UNC states it gauged its extension of credit upon the amount of Midway's repaired parts that UNC had "in house" as well as how much Midway owed UNC at that time. Hence, UNC states it has valid possessory liens against Midway's parts that it holds.

On September 24, 1990, UNC's controller informed Midway in writing that it would no longer be extending credit terms to Midway and that an immediate credit hold would be imposed. UNC's credit hold is an internal review procedure whereby it could closely monitor the open account with a customer who might be having payment problems. Parts already in the possession of UNC would not be released to Midway unless the outstanding repair costs plus $100,000 was paid in advance. The Trustee states the credit hold was implemented as leverage to force Midway to reduce its outstanding accounts payable to UNC. As a result, Midway did not send any more parts to UNC or make any further payments. Accordingly, UNC did not return any more parts to Midway.

On March 25, 1991, Midway filed voluntary Chapter 11 bankruptcy petitions. Thereafter, Midway voluntarily converted the cases to Chapter 7. Sheldon Solow was subsequently appointed Chapter 7 Trustee. The subject motions were filed thereafter.

## III. *APPLICABLE STANDARDS*

UNC has the burden of proof on its stay motion under 11 U.S.C. § 362(g)(1) on the issue of Midway's equity in the subject parts and to show its colorable claim of statutory liens. The Trustee has the burden of proof on all other issues on the stay motion under 11 U.S.C. § 362(g)(2). In order for the Trustee to prevail on his motion for summary judgment, he must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Carroll v. Acme–Cleveland Corp.*, 955 F.2d 1107, 1114 (7th Cir.1992).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987), *quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Asso.*, 806 F.2d 146, 149 (7th Cir.1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. at 1355–56. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1357; *Patrick v. Jasper County*, 901 F.2d 561, 564–66 (7th Cir.1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judg-

ment, which is the Trustee in this matter, may satisfy Rule 56's burden of production by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See* 10A Charles Wright, Arthur Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727, pp. 130–131 (1983).

Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991); *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988); *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn*, 913 F.2d at 331. Rule 56 "requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In order for an issue to be genuinely in dispute, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

Rule 12(m) of the Local General Rules of the United States District Court for the Northern District of Illinois, adopted by General Order of the Bankruptcy Court on May 6, 1986, requires that "[w]ith each motion for summary judgment ... the moving party shall serve and file ... a statement of facts as to which the moving party contends there is no genuine issue...." Local Rule 12(m). The statement must include specific references to the affidavits, parts of the record, and

other supporting materials relied upon to support the summary judgment relief sought. Requiring the moving party to file a Rule 12(m) statement is more than a mere formality as it tells the Court specifically what factual issues raised in the record are genuinely in dispute. *Deberry v. Sherman Hospital Asso.*, 769 F.Supp. 1030, 1033 n. 2 (N.D.Ill.1991). The objective of Rule 12(m) is also designed to insure the nonmoving party an opportunity to respond to such statement. *Pasant v. Jackson Nat. Life Ins. Co.*, 768 F.Supp. 661, 664 n. 2 (N.D.Ill.1991). As the rule itself specifically provides, the failure to file a 12(m) statement is grounds for denial of the motion. *Deberry*, 769 F.Supp. at 1033 n. 2; *Herhold v. Chicago*, 723 F.Supp. 20, 22 n. 1 (N.D.Ill.1989). The Trustee has filed the requisite Rule 12(m) statement consisting of ten separate numbered paragraphs of what the Trustee contends are the undisputed material facts in support of his motion.

Rule 12(n) also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12(n) statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted. UNC has filed the requisite Rule 12(n) statement admitting some of the Trustee's statements (paragraphs 1–4), and denying others in general or denying their materiality or relevancy (paragraphs 5–10).

## IV. *DISCUSSION*

As soon as Midway's petitions in bankruptcy were filed, the automatic stay provisions of 11 U.S.C. § 362(a) took effect. The automatic stay prevented all pre-petition creditors, including UNC, from taking any action to collect their debts. This is so even if creditors have liens or security interests in the property of the debtor which becomes part of the estate under 11 U.S.C. § 541, and even if the value of the collateral is less than the amount of the debt. Congress included provisions for relief from the automatic stay. *See* 11 U.S.C. § 362(d)(1) and (2). The bankruptcy court may lift the stay under section 362(d)(1), for cause, including a lack of adequate protection of a creditor's interest in property of the estate. Under section 362(d)(2), the stay may be lifted if Midway

has no equity in the collateral and the collateral is not necessary to an effective reorganization. Because Midway's cases are now liquidations by the Trustee under Chapter 7, there is no reorganization in progress.

Questions of the validity and perfection of liens are not generally finally determined in a section 362(d) hearing because the issues are limited to the elements under section 362(d)(1) and (2), and whether the moving creditor has a colorable claim to a perfected security interest. *In re Quality Electronics Centers, Inc.*, 57 B.R. 288 (Bankr.N.M.1986). Moreover, hearings to determine whether the stay should be lifted are meant to be summary in character. Many cases hold that the issues considered at a section 362(d) hearing are limited strictly to adequacy of protection, equity, and necessity to an effective reorganization. *See, e.g., In re Johnson*, 756 F.2d 738, 740 (9th Cir.1985), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *In re Ellis*, 60 B.R. 432 (9th Cir. BAP 1985); *Quality Electronics Centers*, 57 B.R. at 290. This conforms with the legislative history of section 362. H.R.Rep. No. 595, 95th Cong., 1st Sess. 344 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6300. Accordingly, in the Seventh Circuit, a hearing on a motion to lift the automatic stay under section 362(d) does not have collateral estoppel or res judicata effect and does not bar subsequent litigation challenging the validity, priority or extent of liens or asserting other claims against the alleged lien creditor. *See In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir.1990). *Vitreous* significantly notes that the issues in consideration under section 362(d) motions are limited to whether the movant has a colorable claim to estate property; is the creditor adequately protected; is there cause for the relief requested; does the debtor (or estate) have equity in the subject property; and the necessity of the property to an effective reorganization. *Vitreous*, 911 F.2d at 1232.

In the matter at bar, the Trustee states Midway dealt with UNC solely on a credit basis. The Trustee relies on a line of New York cases which holds that an artisan, like UNC, gives up its common law artisan's

lien when it deals with a customer solely on a credit basis.[1] These cases reason an artisan can have either a lien obtained through a contract for credit or an artisan's lien,[2] but not both. The rationale is that if an artisan is granting credit to a customer and delivering goods before they are paid for, the artisan is no longer relying on the goods for payment, and the artisan's lien has been relinquished. UNC counters that some of the Trustee's cited cases were determined under Pennsylvania, Massachusetts, New Jersey and North Carolina law, and some involved facts where possession of the goods had been released. Thus, these cases are not controlling and are distinguishable.

In contrast to the Trustee's view, UNC states it has a colorable claim to a lien under New York[3], Texas[4] and Florida[5] law. The Court agrees. A colorable claim (one seemingly valid and genuine) is not a difficult standard to meet. It appears to the Court that UNC has a colorable claim against the parts for their repair by UNC; UNC retained possession of the parts; and it seeks recovery against the Midway estates for the repairs, based on either the contract price or the reasonable charges for such work. UNC indisputably performed labor on Midway's parts. Therefore, it fits the elements under the lien statutes of New York, Texas and Florida.

Moreover, UNC denies it dealt with Midway solely on a credit basis. UNC states numerous factors went into its decision to grant Midway credit including how much Midway already owed UNC, how many Midway parts UNC was holding and how Midway had been paying in the recent past. The facts concerning the exact terms of the debtor/creditor relationship between Midway and UNC are in dispute, and preclude entry of summary judgment.

The Trustee contends the relationship was "solely" on a credit basis prior to September, 1990, and that repaired parts were shipped by UNC to Midway prior to UNC's receipt of payment by Midway for such repairs. Further, the Trustee asserts that some repairs were performed without Midway's prior approval or authorization on certain parts and that many repair changes were excessive and unreasonable. The Trustee also asserts that Midway and UNC never entered any contract or security agreements which granted

1. See *In re Heinsheimer*, 214 N.Y. 361, 108 N.E. 636 (1915); *Clark Bros. & Co. v. Pou*, 20 F.2d 74 (4th Cir.1927). Some other courts have followed this line of reasoning. See *Welded Tube Co. of America v. Phoenix Steel Corp.*, 377 F.Supp. 74 (E.D.Pa.1974), *aff'd*, 512 F.2d 342 (3rd Cir.1975); *Carbon Silk Mills Co. v. Powell*, 108 F.2d 474 (3d Cir.1939); *In re Supreme Lingerie Co.*, 90 F.Supp. 456 (S.D.N.Y.1950), *aff'd*, 186 F.2d 152 (2d Cir. 1951); *Food Specialties, Inc. v. John C. Dowd, Inc.*, 339 Mass. 735, 162 N.E.2d 276 (1959); *Stone v. Allied Clothing Corp.*, 140 N.J.Eq. 224, 54 A.2d 625 (1947); *In re First Hartford Corp.*, 25 B.R. 563 (Bankr.S.D.N.Y.1982), *aff'd*, 33 B.R. 126 (S.D.N.Y.1983); *In re Stevcoknit, Inc.*, 28 B.R. 520 (Bankr.S.D.N.Y.1983), *aff'd*, 35 B.R. 389 (S.D.N.Y.1983).

2. Black's Law Dictionary defines an artisan's lien to be "[t]he statutory right of an artisan to keep possession of the object he has worked on until he has been paid for such labor." See Black's Law Dictionary 104 (6th ed. 1990). In other words, in lieu of entering into a written security agreement under a state version of the Uniform Commercial Code, an artisan holds the goods as collateral until he is paid.

3. New York Lien Law § 180 states:
A person who make, alters, repairs or in any way enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such changes are paid.
N.Y.Lien Law § 180 (McKinney 1993).

4. Texas Property Code § 70.001 states:
(a) A worker in this state who by labor repairs an article, including a vehicle, motorboat, vessel, or outboard motor, may retain possession of the article until:
    (1) the amount due under the contract for the repairs is paid; or
    (2) if no amount is specified by contract, the reasonable and usual compensation is paid.
Tex.Prop.Code Ann. § 70.001 (West 1994).

5. Florida Statute Chapter 713.56 states:
Liens for labor and with machines, etc.
In favor of any person by himself or others performing any labor upon or with any engine, machine, apparatus, fixture, implement, newspaper or printing material or other property, or doing work in any hotel; upon such engine, machine, material, apparatus, fixture, implement, newspaper or printing material, or other property, and upon the furniture, furnishings and belongings of said hotel.
Fla.Stat.Ann. § 713.56 (West 1993).

UNC the right to use Midway parts in UNC's possession as security for outstanding obligations owed by Midway with respect to parts previously repaired and shipped.

 Notwithstanding the apparent lack of such an express contract, UNC counters that nothing in the contract between the parties obviates UNC's state law statutory lien rights. UNC vigorously concludes that the line of New York cases upon which the Trustee relies can be distinguished and is not binding. Florida and Texas do not have cases with such a holding. The Court agrees with UNC that the line of cases the Trustee relies upon is neither persuasive nor controlling, especially with respect to those parts subject to UNC's lien claims arising under Florida and Texas statutes. The Court is not persuaded that the language used under the claimed statutory liens or logic dictates that UNC's liens are lost ipso facto by its concurrent extension of credit terms to Midway.

Finally, the Trustee also contends that certain of the parts are not currently in UNC's possession thereby defeating the possessory lien claims, even if UNC has valid lien claims. It is not clear from the limited record before the Court which of the subject parts are or are not still in UNC's possession, much less undisputed evidence on the alleged lack of equity therein as UNC has alleged for the relief sought under section 362(d)(2) or the alleged depreciation or decline in value thereof as asserted as a lack of adequate protection for the relief sought under section 362(d)(1).

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the Trustee's motion for summary judgment. The previously entered Final Pretrial Order setting this proceeding for trial beginning July 11, 1994, remains in full force and effect.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.