**In re William R. MURRAY, Debtor.**

**No. 01 B 36167.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 25, 2002.

 `

Harold L. Moskowitz, Chicago, IL, for Movant.

Marc C. Scheinbaum, Kofkin, Springer, Scheinbaum, PC, Addison, IL, for Debtor.

Richard G. Larsen, Charles J. Myler, Myler, Ruddy & McTavish, Aurora, IL, for Patricia Murray.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motion of Conrad Gacki ("Gacki") to modify the automatic stay pursuant to 11 U.S.C. § 362(d) to allow him to continue with a proceeding in the Circuit Court of DuPage County, Illinois wherein he seeks a petition for a tax deed on certain property owned by William R. Murray (the "Debtor") and on the objection of Gacki to the confirmation of the Debtor's amended Chapter 13 plan. For the reasons set forth herein, the Court grants the motion to modify the automatic stay to allow Gacki to continue with the petition for a tax deed proceeding pending in the Circuit Court of DuPage County, Illinois. In addition, the Court sustains Gacki's objection to the Debtor's amended plan and denies confirmation.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(G) and (L).

### II. FACTS AND BACKGROUND

The facts are undisputed. The Debtor was the last record owner in the chain of title of certain parcels of real property which he scheduled as "4 unimproved lots on Ann, Lombard, Illinois" (collectively, the "Property"). The Debtor, however, failed to pay the general real estate taxes assessed against the Property for 1997.

In accord with the relevant statutory provisions, on December 7, 1998, the County of DuPage, Illinois sold the Property for the delinquent real estate taxes to Gacki. The last date the real estate taxes could be redeemed under state law was December 6, 2001. No redemption of the unpaid taxes was made by the Debtor or any other party. Prior to the date of the bankruptcy filing, on August 1, 2001, Gacki, as holder of the certificates of purchase from DuPage County, filed a petition for tax deed in the Circuit Court of DuPage County, Illinois. *See* Gacki's Exhibit No. 3.

The Debtor filed a Chapter 13 petition on October 16, 2001. The Debtor's Schedules list the Property as an asset which he valued at $600,000.00, subject to a secured

claim of $110,000.00 held by his former spouse, Patricia Murray. The Schedules do not list Gacki as a creditor. *See* Gacki's Exhibit No. 1, Schedule A—Real Property and Schedule F–Creditors Holding Unsecured Nonpriority Claims. The Debtor filed a Chapter 13 plan on November 15, 2001. *See* Gacki's Exhibit No. 2. The original plan proposed to pay the Chapter 13 Standing Trustee $1,550.00 per month for thirty-six months, or a total of $55,800.00. The Trustee was to pay the Debtor's home mortgage arrears of $50,000.00 owed on a different property from that sum. Moreover, unsecured creditors were to receive 100% of their claims. The plan listed the DuPage County Collector as a creditor and sought to pay the delinquent taxes during the term of the plan through the sale of a different property on unspecified terms, at an unspecified time, and to an unspecified purchaser.

On December 27, 2001, Patricia Murray, the former spouse of the Debtor, filed an objection to the plan. She contended that she is a secured creditor of the Debtor by virtue of an order entered on March 30, 2001 by the Circuit Court of DuPage County, Illinois in the dissolution proceeding between her and the Debtor. On that date, she was granted a judgment lien in the amount of $131,615.90 against the Property and the Debtor's residence. She argued that plan ignored her secured status and the judgment lien.

On January 3, 2002, West Suburban Bank filed an objection to the Debtor's plan. West Suburban Bank argued that it is a secured creditor of the Debtor by reason of two judgment liens which were entered in its favor in the sums of $12,784.74 and $5,920.28. Both judgments were recorded as liens against the Debtor's residence. West Suburban Bank filed two proofs of claim on October 24, 2001. It objected to that plan on the basis that

the plan failed to provide for the payment of its secured claims.

On January 15, 2002, Gacki filed his motion to lift the automatic stay pursuant to 11 U.S.C. § 362(d) in order to permit him to continue the prosecution of the petition for a tax deed for the subject Property. Gacki argues that because the redemption period expired on December 6, 2001, the Debtor has no further interest in the Property; the Debtor has no possibility of filing a confirmable Chapter 13 plan; the Property is not necessary for an effective reorganization; and Gacki is not being provided adequate protection for his interest in the Property.

On February 20, 2002, the Debtor filed an amended Chapter 13 plan. Thereafter, on February 22, 2002, Gacki filed an objection to the amended plan. He contended that the payments to be made to the Chapter 13 Standing Trustee by the Debtor ($1,550.00 per month for thirty-six months or $55,800.00) do not cover the outstanding mortgage arrearage of $58,611.72, owed to another creditor, let alone meet any of the other obligations under the plan, including the Debtor's attorney's fees ($2,985.00) and payment to unsecured creditors ($9,625.00). Further, Gacki argued that the amended plan made no provision for the payment of West Suburban Bank's secured claim. On February 22, 2002, the Court sustained the objections of Patricia Murray and West Suburban Bank to confirmation of the Debtor's original and amended plans. The Court afforded the Debtor the opportunity to file any further amended plan, which he did on March 14, 2002. This amended plan differs from the other versions in that it provides for payment of West Suburban Bank's claim in full in monthly installments of $300.00 for thirty-six months and $658.00 for twenty-four months. The monthly plan payments to the Chapter 13 Standing Trustee have

increased from $1,500.00 to $2,000.00 per month for sixty months or $120,000.00. Moreover, the amended plan indicates that Patricia Murray shall be paid from the sale of one of the lots comprising the Property as to which an undisclosed contract in excess of the amount owed to her allegedly exists.

## III. *DISCUSSION*

### A. *Motion to Modify the Automatic Stay*

The principal issue before the Court is whether the automatic stay should be modified so as to allow Gacki to continue with the state court proceeding to obtain a tax deed on the subject Property. Section 362(d) of the Bankruptcy Code provides for modification of the automatic stay, and states in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have any equity in such property; and

(B) such property is not necessary to an effective reorganization. . . .

11 U.S.C. § 362(d)(1) and (2). Hearings on the automatic stay should be summary in nature and limited to the elements of § 362(d). *In re Midway Airlines, Inc.,* 167 B.R. 880, 883 (Bankr.N.D.Ill.1994) (*citing In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1232 (7th Cir.1990)). The Court need not and should not address the validity of the various creditors' claims

during the hearing. *In re Cadwell's Corners Partnership,* 174 B.R. 744, 759 (Bankr.N.D.Ill.1994); *Midway,* 167 B.R. at 883. The Bankruptcy Code sets forth the burden of proof on a motion for relief from the stay in § 362(g) which provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g). Thus, in order for Gacki's motion to be granted, he must prove either that his interest in the Property is not being adequately protected under § 362(d)(1) or that the Debtor lacks equity in the Property, and it is not necessary to an effective reorganization under § 362(d)(2). The Debtor, Patricia Murray and West Suburban Bank, as the parties opposing Gacki's motion, have the burden of proof on all other issues, namely and most significantly, whether the Property can be redeemed by the Debtor, via this Chapter 13 proceeding after December 6, 2001, when neither the Debtor nor any other party redeemed the delinquent taxes as provided by the relevant state statutory provision.

The heart of the argument centers around the interplay between 11 U.S.C. § 108(b) and 11 U.S.C. § 1322(b)(2). The Debtor seeks to pay the delinquent taxes on the Property to the DuPage County Collector through some form of future sale of that Property. The Debtor, Patricia Murray and West Suburban Bank maintain that even though the sixty-day extended redemption period under § 108(b) has expired, the Debtor can provide for payment of the delinquent real estate taxes in

his Chapter 13 plan pursuant to § 1322(b)(2). In other words, as long as the redemption period has not expired prior to the filing of the bankruptcy petition, the Debtor states that he may treat the tax purchaser's claim as a secured claim under the Chapter 13 plan. In support of this proposition, he cites and urges the Court to follow *In re Bates*, 270 B.R. 455 (Bankr.N.D.Ill.2001) (Wedoff, J.).

█ In addition, the Debtor maintains that the language in § 108(b) which states "the trustee may ..." gives the right to cure only to the trustee, and not to the debtor. The Debtor argues that § 108(b) specifically mentions "debtor," but gives the right to cure only to the trustee. Although § 108(b) refers only to the trustee, it also extends time periods for a Chapter 11 or 12 debtor-in-possession who have the rights and powers of a trustee serving under those chapters. For this reason, § 108(b) should apply to Chapter 13 debtors who are entitled to remain in possession of all property of the estate and retain the right to any cause of action that would otherwise pass to a trustee. *See* 11 U.S.C. § 1306(b). Accordingly, the Court rejects the Debtor's argument that § 108(b) affords the right to cure only to the trustee. The substantial weight of extant case law discussed below, generally extends the benefits of § 108(b) to Chapter 13 debtors.

█ Gacki, on the other hand, argues that the *Bates* case goes against the weight of the case authority and effectively renders § 108(b) superfluous. Rather, Gacki urges the Court to follow the decisions of *In re Bequette*, 184 B.R. 327 (Bankr.S.D.Ill.1995) (Meyers, J.) and *In re Blue*, 247 B.R. 748 (Bankr.N.D.Ill.2000) (Barliant, J.). *Bequette* held, among other things, that upon expiration of the state statutory redemption period, without redemption the owner loses all rights to the property, including the right to redeem.

184 B.R. at 336. *Blue* held that because no debtor-creditor relationship existed between a property owner and a tax purchaser, like the principal parties here, no proper claim exists as defined in 11 U.S.C. § 101(5). 247 B.R. at 751–53. *Bequette* followed a line of cases for the point that once the state statutory period of redemption runs, as extended by § 108(b), the debtor/owner's redemption ownership rights are extinguished. *See, e.g., Jackson v. Midwest Partnership*, 176 B.R. 156, 159 (N.D.Ill.1994) (Plunkett, J.); *In re Davenport*, 268 B.R. 159, 165 (Bankr.N.D.Ill. 2001) (Schmetterer, J.); *In re Stewart*, 190 B.R. 846, 851 (Bankr.C.D.Ill.1996) (Altenberger, J.); *In re Butler*, 171 B.R. 321, 326 (Bankr.N.D.Ill.1994) (Schmetterer, J.); *In re McKeever*, 132 B.R. 996, 1010–11 (Bankr.N.D.Ill.1991) (Katz, J.); *In re Rich*, Bankr. No. 92 B 23792, Adv. No. 93 A 00976, 1994 WL 527161 at *3 (Bankr. N.D.Ill. May 25, 1994) (Coar, J.). Thus, Gacki contends that once the sixty-day period under § 108(b) expires, the Debtor no longer has the ability to redeem the taxes, and cannot end-run § 108(b) by providing for payment of the taxes for the life of the plan under § 1322(b)(2). A brief recitation of the relevant Illinois law and the provisions of the Bankruptcy Code is in order. *Bates* and its predecessors amply discuss the Illinois real estate tax sale procedures which need not be recounted in detail here.

Under Illinois law, taxes on real property constitute a lien on the assessed property. 35 ILCS 200/21–75. If the taxes are not paid, the county collector may sell the taxes to the highest bidder at a tax sale. 35 ILCS 200/21–190. After the taxes are sold, the county's lien is extinguished and the tax buyer is given a tax certificate which entitles him to payment of the purchase price of the taxes plus an interest penalty. *In re Milne*, 185 B.R. 280, 281 n. 1 (N.D.Ill.1995). Accordingly, the County

is no longer a creditor of the Debtor and the amended plan incorrectly provides for payment to the County while making no provision to deal with Gacki's *in rem* claim to the Property.

If the property owner does not redeem the taxes within the statutorily allowed period, his interest in the property is extinguished and the tax purchaser may obtain a tax deed on the property. 35 ILCS 200/22–40. Thus, all other parties' ownership and lien rights in such property can be extinguished through the Illinois tax sale procedure which accords first priority to the county real estate tax lien. If not paid when due or redeemed after sale, the tax sale procedure cuts off the interest of the property's owners and lienors in favor of the tax purchaser.

Thus, the ultimate issue, as framed by the parties, is whether the Debtor can still redeem the taxes via § 1322(b)(2) as *Bates* would allow, or whether the Debtor has lost the opportunity to redeem after the expiration of the state statutory period, as extended by § 108(b), as Gacki argues and *Stewart* and other cases support. Section 108(b) of the Bankruptcy Code provides:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, *the trustee may only* file, *cure,* or perform, as the case may be, *before the later of—*
>
> > (1) *the end of such period,* including any suspension of such period occurring on or after the commencement of the case; *or*

> > (2) *60 days after the order for relief.*

11 U.S.C. § 108(b) (emphasis supplied). Moreover, § 1322(b)(2) of the Bankruptcy Code provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> > (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

The Debtor contends that the language in § 1322(b)(2) is specific, and the intent clear, regarding his ability to modify the rights of secured creditors under the Chapter 13 plan. It is under this provision that the Debtor argues he is still entitled to pay the delinquent taxes, even though the § 108(b) extended redemption period has expired. Although the Court agrees with the dicta in *Bates* that views a tax purchaser's interest, via a certificate of purchase, as an *in rem* claim against the property, and not an *in personam* claim against the debtor, as correctly noted in *Blue,* the Court respectfully disagrees with the *Bates* dicta that § 1322(b)(2) effectively controls over the temporal limits established in § 108(b).

The Court declines to follow the view that a secured claim of a tax purchaser may be satisfied in a Chapter 13 case through a plan that provides for full payment of the claim, with interest, in installments over the life of the plan or even longer as contemplated in § 1322(d) (up to five years). The Court respectfully disagrees with the dicta in the *Bates* case that "§ 108(b) does not limit the right to modify secured claims specifically accorded by §§ 1322(b)(2) and 1325(a)(5)." 270 B.R. at

466 (footnote omitted). The *Bates* court more fully explained:

> nothing in § 108(b) transforms the extension of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code. The Seventh Circuit made this clear in *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1215 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984), where it found that § 108(b) could not limit the right to cure executory contracts specifically accorded by § 365 of the Code. Similarly, § 108(b) would not prevent a Chapter 7 trustee from selling property subject to a tax purchaser's claim under § 363(f)(3), and § 108(b) does not limit the right to modify secured claims specifically accorded by §§ 1322(b)(2) and 1325(a)(5).

270 B.R. at 466 (footnote omitted). The Court is of the view that *Moody* is inapposite because it did not involve § 1322(b) as in the case at bar, and was decided prior to *In re Tynan*, 773 F.2d 177 (7th Cir.1985) which specifically invoked and dealt with § 108(b). Additionally, the Court disagrees with the statement in *Bates* that:

> As long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case—through . . . plan treatment in Chapter 13—even though the redemption period expires during the pendency of the case.

270 B.R. at 467.

The *Bates* court concluded that § 1322(b)(2) effectively trumps § 108(b), with which this Court respectfully disagrees. The Court believes that the interplay of these two Code sections requires that they be read harmoniously. The better and majority view is that the power of modification of secured claims under § 1322(b)(2) is effectively limited by and to the extended time period afforded for re-

demptions under § 108(b). Statutes dealing with the same subject matter are to be read in *pari materia* and harmonized when possible. *In re Johnson*, 787 F.2d 1179, 1181 (7th Cir.1986); *In re Robison*, 665 F.2d 166, 171 (7th Cir.1981). Chapter 13 should not be read in a manner that would render a provision of the Bankruptcy Code superfluous or insignificant. *See Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970–71 (5th Cir.1981). As the Debtor aptly noted, the Court's equitable powers are generally constrained by the limits imposed by the Bankruptcy Code itself which must be applied. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *see also Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 24, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

Moreover, the Seventh Circuit Court of Appeals specifically held in *In re Tynan*, 773 F.2d 177 (7th Cir.1985) that "when a petition in bankruptcy is filed before the expiration of the applicable state redemption period, § 108(b) extends the redemption period for 60 days from the commencement of bankruptcy proceeding." *Id.* at 179. That clear holding is binding and the latest law of the circuit in regards to the temporal limits of § 108(b) regarding redemption periods as extended by that section. *Tynan* held that a Chapter 13 debtor could not utilize § 1322 to redeem real estate from a mortgage foreclosure sale through periodic payments over the life of the plan, but could only redeem the real estate under the time constraints of the Illinois Foreclosure Act, as extended by § 108(b). Although the *Tynan* case dealt with a mortgage foreclosure proceeding, the holding therein regarding § 108(b) logically also applies to tax sale proceedings. The *Bates* case quickly dismissed the holding in *Tynan* on this basis. 270 B.R. at 466–67 n. 7. This Court is not so

quick to discount *Tynan's* express holding on § 108(b) merely on the basis that there the debtor was attempting to cure a mortgage default, not to modify a secured claim of a tax purchaser. The only material difference between *Tynan* and the case at bar is that in *Tynan*, the debtor's proposed plan dealt with redemption of real estate from a mortgage foreclosure sale, whereas in this matter, the Debtor's proposed plan attempts to deal with redemption of real estate from a tax sale.

■ If the Court were to allow the Debtor to pay the delinquent real estate taxes over the sixty month life of the amended plan, then the Court would be effectively ignoring the express holding in *Tynan* and rendering § 108(b) a nullity by permitting the Debtor to set his own time line for redemption of the Property under § 1322(b)(2) and § 1322(d). Congress did not include in § 108(b) any language further extending redemption rights or specifically providing as a further extension the period set forth in a plan filed under § 1322(b)(2). *Bates*, in effect, adds this language to § 108(b), which the Court believes it cannot do in this matter. As the United States Supreme Court has stated, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In addition, the weight of the extant case law supports the conclusion that § 108(b) requires a debtor to redeem the taxes within the sixty-day extension period therein. *See Jackson*, 176 B.R. at 159; *Bequette*, 184 B.R. at 336; *Stewart*, 190 B.R. at 851; *Multnomah County v. Rudolph (In re Rudolph)*, 166 B.R. 440, 444 (D.Ore.1994).

The Court concludes that the better analysis limits the debtor to the shorter extension under § 108(b) to redeem the taxes. The failure to timely do so cannot be further cured or extended under a Chapter 13 plan by way of § 1322(b)(2). The Court holds that after the statutory extended redemption period under § 108(b) expired, all of the Debtor's redemption rights expired. Hence, Gacki has demonstrated that the automatic stay should be modified for cause to allow him to obtain a tax deed. When the extended redemption period expired, the redemption rights of the Debtor were extinguished, the estate had no interest in the Property, and cause exists for the automatic stay to be modified under § 362(d)(1). Moreover, the Debtor's amended plan fails to adequately protect, directly address or provide for Gacki's interest in the Property as the holder of the certificates of purchase.

■ The Debtor contends that he has "certain equitable defenses" to the motion to modify the automatic stay. Specifically, he claims that to allow Gacki to purchase the subject Property with an approximate equity value of $450,000.00 for only $7,411.00 (the amount of the unpaid delinquent taxes) results in a windfall of approximately $440,000.00 to Gacki at the expense of the creditors of the estate, including the Debtor's former spouse who hold a judgment lien against the Property pursuant to the dissolution proceeding. Gacki disputes the Debtor's invocation of unjust enrichment on the basis that Gacki's actions in purchasing the delinquent taxes were in accordance with Illinois law, 35 ILCS 200/22–40, and thus can neither be unjust nor wrongful. Although afforded the opportunity to show evidence of some improper conduct by Gacki, or some fatal defect in the state tax sale conducted pre-petition, no such evidence was adduced by the Debtor.

Under Illinois law, a claim for unjust enrichment exists when a defendant (1) receives a benefit, (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit would be unjust. *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir.1998) (*citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 161–62, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989)). Moreover, *State Farm General Ins. Co. v. Stewart*, 288 Ill.App.3d 678, 691, 224 Ill.Dec. 310, 681 N.E.2d 625, 633 (1st Dist.1997), *appeal denied*, 174 Ill.2d 595, 227 Ill.Dec. 17, 686 N.E.2d 1173 (1997) noted that some type of wrongful conduct must be shown to support an unjust enrichment claim.

The Debtor has failed to establish the last critical element to invoke the unjust enrichment doctrine. The Court agrees with Gacki that his act of paying the delinquent real estate taxes on the subject Property as countenanced and approved under Illinois law resulted only because the Debtor failed to pay the Property's real estate taxes when due. As such, Gacki's conduct in following the relevant statutes is not unjust or wrongful. The fact that the equity in the Property at bar is valued at approximately $450,000.00 and Gacki paid the delinquent real estate taxes in the sum of $7,411.00, does not warrant the Court finding that such action constitutes an unjust enrichment. Rather, the Debtor failed to tender the required sum required for redemption prior to the expiration of the statutory period as extended by § 108(b). Section 108(b)'s limits cannot be ignored by the Court, but rather, serve as a temporal limit on the power to modify secured claims granted under § 1322(b)(2). Accordingly, the Debtor's "certain equitable defenses" fail.

The Debtor also argues that a potential action may be filed against Gacki under 11 U.S.C. § 548 to avoid the tax sale and retrieve the Property. The Court rejects this argument. First, the tax sale was conducted pre-petition and § 548(a) contemplates avoidance of pre-petition transfers. However, only the delinquent taxes were purchased by Gacki, not the underlying title to the Property, which has yet to occur at the conclusion of the tax deed proceedings in the state court, post-petition. Second, the majority opinion in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) held that § 548(a)(2) was an exclusive means of invalidating foreclosure sales that failed to comply with all governing state laws and that a non-collusive and regularly conducted foreclosure sale could not be challenged thereunder as a fraudulent conveyance. *Id.* at 545, 114 S.Ct. 1757. By analogy, *BFP* logically applies to tax sales. The Debtor has failed to adduce any evidence challenging the pre-petition conduct of Gacki or any evidence that the tax sale was conducted other than in accord with the relevant Illinois state law. Finally, the Debtor has not filed the requisite adversary proceeding to avoid the purchase by Gacki, or other similar equitable relief as required by Federal Rule of Bankruptcy Procedure 7001. Such relief would be procedurally inappropriate at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the motion to modify the automatic stay under § 362(d) to allow Gacki to continue with the proceeding in the Circuit Court of DuPage County, Illinois in order to obtain a tax deed on the Property. In addition, the Court sustains Gacki's objection to the Debtor's amended plan and denies confirmation.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bank-

ruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.